In the Matter of the Application of FRED H. STUBBE et al., Copartners, under the Name of the BRONX GARAGE, Appellants, *v.* ROBERT ADAMSON et al., Constituting the Board of Hazardous Trades of the City of New York, Respondents.

**Municipal corporations — when municipal ordinance passed, under legislative authority regulating storage of volatile and inflammable oils a constitutional valid exercise of the police power — when evidence should not be received to show that ordinance was unnecessary and the remedy ineffective.**

1. While enforcement of a municipal ordinance passed under general legislative authority may be resisted by evidence of its unreasonableness, evidence may not be introduced for the purpose of showing that it is unreasonable and, therefore, unconstitutional, if it was adopted under specific authority of the legislature or approved by that body after its adoption.

2. The former municipal explosives commission of the city of New York adopted a regulation that no garage permit should be issued authorizing the storage of volatile inflammable oil for any premises storing more than four motor vehicles, unless provided with an oil

separator to prevent such oils from flowing into the sewer. While this rule was in force the legislature passed an act which provided that the regulations of the commission should "constitute a chapter of the code of ordinances of the city" (L. 1911, ch. 899, § 778-c), and it became such. (Ch. 10, art. 11, § 155.) Thereafter the charter was amended by an act which transferred the powers and functions of the explosives commission to the fire commissioner (L. 1914, ch. 495), and in that act it was provided that "all regulations of such commission in force immediately prior to the passage of this act shall continue to constitute a chapter of the code of ordinances of the city," and the storage of combustibles in violation of the regulations was prohibited. *Held*, that the legislature thus expressly recognized, approved and continued in force the original regulation adopted by the explosives commission and gave to it the character of a statute.

3. The ordinance was adopted in the exercise of the police power. The courts must start out with the presumption that the legislation is constitutional and valid, and however they may doubt the wisdom of an enactment they cannot pronounce the same unconstitutional unless able to see either that there is no real, substantial evil of public interest to be guarded against, or that there is no relation between the evil and the purported cure or prevention offered by the statute. Applying these principles appellants should not be permitted to introduce evidence and ask a jury to say therefrom that the enactment was unnecessary and the proposed remedy ineffective and expensive, and, therefore, oppressive and unconstitutional.

*Matter of Stubbe* v. *Adamson*, 173 App. Div. 305, affirmed.

(Argued January 10, 1917; decided April 24, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 16, 1916, which reversed an order of Special Term granting a motion for an alternative writ of mandamus.

The facts, so far as material, are stated in the opinion.

*Charles Thaddeus Terry* and *Edward Ward McMahon* for appellants. The appellants adopted the proper remedy to have determined the constitutionality or reasonableness of the ordinance in question, and whether such ordinance be considered as a legislative enactment, or as having been passed pursuant to specific express power conferred

or passed pursuant to general powers, express or implied, the appellants are entitled to have its constitutionality or reasonableness determined by the courts as a question of law, and any issue of fact upon which the decision of such question of law may depend settled by a trial by jury as provided by sections 2067, 2082 and 2083 of the Code of Civil Procedure. (*Baird* v. *Supervisors, etc.*, 138 N. Y. 95; *Matter of Markland* v. *Scully*, 203 N. Y. 158; *Matter of Reynolds*, 202 N. Y. 430; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 93; *Matter of Simons* v. *McGuire*, 204 N. Y. 253; *People ex rel. W. A. Co.* v. *Murphy*, 195 N. Y. 126; *People ex rel. S. P. Co.* v. *Edgcomb*, 112 App. Div. 604; *People ex rel. Moriarty* v. *Creelman*, 152 App. Div. 147; *Welch* v. *Swazie*, 193 Mass. 364.) The ordinance in question is clearly unreasonable and unconstitutional. (*People* v. *Ringe*, 197 N. Y. 143; *Schanier* v. *N. H. & T. Co.*, 182 N. Y. 83.)

*Lamar Hardy, Corporation Counsel (E. Crosby Kindleberger, Terence Farley* and *William J. Millard* of counsel), for respondents. The constitutionality of an ordinance or statute is to be determined as a question of law, from the face of the ordinance, together with the facts proved, and facts of which the court will take judicial notice. (*Tenement House Dept.* v. *Moeschen*, 179 N. Y. 325; 203 U. S. 583; *People ex rel. Kemmler* v. *Durston*, 119 N. Y. 569; 136 U. S. 436; *People ex rel. Knoblauch* v. *Warden*, 216 N. Y. 154; *People* v. *Klinck Packing Co.*, 214 N. Y. 121; *People* v. *Schweinler Press*, 214 N. Y. 395; *People ex rel. Keller* v. *Village of Oak Park*, 266 Ill. 365.) Section 155 of the ordinances requiring oil separators to be installed in garages is a valid exercise of the police power. (*Matter of J. S. Co.* v. *Johnson*, 157 App. Div. 779; *Matter of McIntosh* v. *Johnson*, 211 N. Y. 265; 160 App. Div. 563; *T. H. Dept.* v. *Moeschen*, 179 N. Y. 326; 203 U. S. 583; *L. H. Cemetery* v. *City of San Francisco*, 216 U. S. 358; *Union Oil Co.* v. *City*

*of Portland,* 198 Fed. Rep. 441; *Standard Oil Co.* v. *City of Danville,* 199 Ill. 50; *Fire Department New York* v. *Gilmour,* 149 N. Y. 453; *City of New York* v. *Foster,* 148 App. Div, 258; 205 N. Y. 593; *People ex rel. Van Beuren* v. *Miller,* 161 App. Div. 138; *City of Rochester* v. *McCauley-Fien M. Co.,* 199 N. Y. 207; *Fifth Avenue Coach Co.* v. *City of New York,* 194 N. Y. 19; 221 U. S. 467; *City of Rochester* v. *Gutberlett,* 211 N. Y. 309; *City of Rochester* v. *West,* 164 N. Y. 510.)

HISCOCK, Ch. J.    The appellants are the owners of a garage in the borough of Manhattan which they desire to maintain and operate as such.    Concededly they cannot do this without a license and such license was refused on the ground that their garage came within the terms of a municipal regulation applicable to said borough, providing that a license should not be granted to a garage storing four or more automobiles unless there had been installed therein an oil separator for the purpose of separating gasoline from the effluent which might be discharged from the garage into the sewer.    Appellants thereupon applied for a writ of mandamus compelling the issuance of a license to them, although they had not installed such separator, upon the grounds, amongst others, that there was no necessity for separating from the discharge into the sewer the small quantity of gasoline to be found therein, and that no oil separator had been devised which would thus separate the gasoline even if it were necessary, and that, therefore, it was unreasonable to require them to expend a considerable amount of money in installing a process which was utterly useless. The respondents filed affidavits upon said application tending to show on the contrary that it was dangerous to allow gasoline to be discharged from a garage into the sewer, that there were effective oil separators and that the expense of installing them was entirely reasonable.    Upon these conflicting claims the court at

Special Term ordered an alternative writ of mandamus whereby would be tried the issues thus presented, and this order was reversed by the Appellate Division, which determined that appellants were not entitled to question the validity of the requirement in such manner. We are, therefore, presented with the question, in effect, whether the appellants are entitled to introduce evidence for the purpose of showing that the requirement aimed at them is unreasonable, and to have a jury set up its judgment against that of the law-making power and declare that the same should not be enforced.

The primary query to be determined in the settlement of this ultimate question involves a consideration of the nature of the regulation which the authorities are seeking to enforce against the appellants, for it is well settled that the rules governing an attack upon a mere ordinance adopted by municipal authorities in pursuance of general authority are quite different than those which are applicable to an attack upon a statute passed by the legislature or an ordinance adopted under specific authority of the legislature or approved by that body after adoption. Enforcement of a regulation having the force of an ordinary municipal ordinance passed under general authority may be opposed on the ground that the ordinance is unreasonable and evidence may be introduced for the purpose of establishing this defense (*Mayor, etc., of N. Y.* v. *D. D., E. B. & B. R. R. Co.*, 133 N. Y. 104; *Village of Carthage* v. *Frederick*, 122 N. Y. 268) whereas in the case of a statute or of an ordinance having the force of a statute it is equally well settled as a general proposition that evidence may not be introduced for the purpose of showing that the statute or ordinance is unreasonable, and, therefore, unconstitutional. In our opinion the regulation attacked by the appellants had the force and effect of a statute because expressly authorized and approved by the legislature, and, therefore, was not subject to attack in the manner sought by them.

The present regulation is found in the Code of Ordinances (Chap. 10, art. 11, § 155) and it provides: "No garage permit authorizing the storage of volatile inflammable oil shall be issued for any premises, storing more than 4 motor vehicles, which are not provided with an oil separator, trap or other similar apparatus attached to the house drain, for the purpose of preventing volatile inflammable oils from flowing into the sewer."

Originally this provision was in the form of a regulation adopted by the former municipal explosives commission. While it was in force as a mere rule of that commission the legislature passed chapter 899 of the Laws of 1911, amending the Greater New York charter by adding thereto section 778c, which provided that the regulations of that commission, approved by the fire commissioner with certain immaterial exceptions, should "constitute a chapter of the code of ordinances of the city, and shall be subject to amendment and repeal by the board of aldermen." In pursuance of this statutory authority, and on January 3d, 1912, this regulation became a part of the Code of Ordinances of the city. (Cosby's Code of Ordinances of 1912, art. 11, § 376, p. 396.)

Thereafter section 778c of the charter, which had thus authorized the incorporation of this regulation amongst the ordinances of the city, was amended by chapter 495 of the Laws of 1914, which provided: "The powers and functions heretofore given to and vested in the municipal explosives commission are hereby transferred· to and vested in the fire commissioner, and the municipal explosives commission is hereby abolished.   *   *   *   All regulations of such commission in force immediately prior to the passage of this act shall continue to constitute a chapter of the code of ordinances of the city, subject to amendment or repeal by the board of aldermen. The fire commissioner is further empowered to make additional regulations for the sale, storage, keeping, manufacture

or transportation of combustible, inflammable or explosive materials or articles. The sale, storage, keeping, manufacture or transportation of combustible, inflammable or explosive materials or articles in violation of the regulations authorized by this section is hereby prohibited."

By these enactments, it seems to us that the legislature expressly recognized, approved and continued in force the regulation in question amongst others and thereby gave to it for the purposes under discussion the character of a statute.

The general rule is that an ordinance adopted by a municipal corporation, " pursuant to authority expressly delegated by the legislature, has the same force within the corporate limits as a statute passed by the legislature itself. Where, however, the power to legislate is general or implied, and the manner of exercising it is not specified, there must be a reasonable use of such power, or the ordinance may be declared invalid by the courts." (*Village of Carthage* v. *Frederick, supra,* p. 271.) It is equally true that the same statutory force may be given to an ordinance after its adoption by legislative recognition and approval.

In *City of New York* v. *Trustees Sailors' S. Harbor* (85 App. Div. 355, 360, 361; affd., on opinion below, 180 N. Y. 527) a section of the Building Code was in question. The charter provided that the provisions of the " building code which shall be in force in the City of New York on the first day of January, nineteen hundred and two, * * * are hereby declared to be binding and in force in the City of New York." The court there said: " In view of this ratification by the Legislature of the power to enact the Building Code, we fail to see why the Building Code should not be given the same force within the corporate limits as the statute passed by the Legislature itself."

In *Grimmer* v. *Tenement House Dept. of N. Y.* (204 N. Y. 370, 377), where a provision of the Building Code

30

was again in question, it was held and said: "If the provision of the Building Code already quoted * * * was 'in force in the City of New York on the first day of January, 1902,' the statute in question (being the same statute referred to in the case last cited) had the effect of expressly ratifying and adopting and continuing a definition of an apartment house," and giving to it the effect of a statute.

In *Hart* v. *City Theatres Co.* (215 N. Y. 322) it was held that the same Building Code had the force of a statute in the city of New York, and that a contract violating its provisions was unenforceable and contrary to public policy, there being applied the same rule as would be applicable to the violation of a statutory enactment.

In *People ex rel. Lieberman* v. *Vandecarr* (175 N. Y. 440) a section of the Sanitary Code was in question, and it was there said that the section had legislative sanction, and "is recognized and adopted by the original and amended charter of the City of New York," although all that was contained in the charter in this respect was the declaration that existing provisions of such code should be binding and in force in the city. (Charter, § 1172.)

In *Matter of McIntosh* v. *Johnson* (211 N. Y. 265, 271) one of the regulations of the municipal explosives commission relating to the location of garages was claimed to be unreasonable. Judge CUDDEBACK there said: "The legislature has authorized the adoption of this ordinance." He then proceeded to apply the same tests as would be applicable to a statute, saying: "It is well settled in this court and in the Supreme Court of the United States, that the constitutionality of a statute may be determined by considering its language and the material facts of which the court can take judicial notice. * * * It is not the hardship of the individual case that determines the question, but rather the general scope and effect of the legislation as an exercise of the police power in protecting health and promoting the welfare of the com-

munity at large." In the brief of the city presented in that case it was contended that the ordinance there involved had been sanctioned by the legislature by the very provisions here in question.

In *People ex rel. Knoblauch* v. *Warden, etc* (216 N. Y. 154, 162) the validity of section 80a of the Sanitary Code was questioned. Judge COLLIN said: "The appellant asserts that the section is, under the evidence, unreasonable. She has the right to take that position. It was not expressly authorized by specific legislative authority defining its details and mode of enforcement. It rests rather upon a legislative grant of general authority, and its reasonableness and fairness may be questioned." There, however, the particular section under consideration was not a part of the Sanitary Code when the legislature ratified it, and the implication from this language is that if it had been so ratified, its reasonableness could not have been tested by the introduction of evidence.

It is urged, however, that the act of 1914 cannot be considered as a ratification of the ordinance in question because under our decision in *Mills* v. *Sweeney* (219 N. Y. 213, 220) it was held that only *valid* ordinances are thus ratified. In that case the common council was without any power to enact the ordinance under consideration and which, therefore, was without jurisdiction and absolutely void *ab initio.* It was written by Chief Judge BARTLETT: "A statutory provision that ordinances 'now in force' shall remain in force until altered or repealed does not validate a *void* ordinance." We do not think that the rule there applied is applicable here. The body adopting the regulation in question had full power and jurisdiction to legislate on that subject. The ordinance was not void in that sense. The only claim is that extraneous evidence would make it appear that the municipal body had proceeded further than it should have done and had produced a regulation that was unreasonable. So far as appears no such attack had been made at the time the

legislature passed the statutes which have been referred to, and the ordinance in that aspect at least was in force. In addition there is the serious question hereinafter referred to, whether upon the record it does not appear that this regulation was so largely a matter of opinion and judgment that a jury would not be permitted to say that it was capricious and arbitrary to the extent of being unconstitutional.

It is also urged that the only purpose of the statute of 1914, which continued in force the regulations of the municipal explosives commission, was to bridge over the interregnum consequent upon the abolishment of that commission and the transfer of its powers to the fire commissioner. While that was one of the purposes of the act, it was not its only purpose. It is plainly evident that the legislature in making the change intended to continue the regulations then in force, not only during the interregnum, but for the future. This is shown by the provision that while the fire commissioner, in whom the powers of the old commission were vested, had the power to make additional regulations, the old regulations could only be amended or repealed by the board of aldermen. Until that event happened they were to be continued in force.

Having reached the conclusion that the ordinance invoked against appellants had acquired the force and character of a statute, we come to the ultimate question whether the appellants could be permitted to introduce evidence and ask the jury to say therefrom that the enactment was unnecessary and the proposed remedy ineffective and expensive, and, therefore, oppressive. As already indicated, we have no doubt that this question must be answered in the negative.

The ordinance clearly was adopted in the exercise of the police power, and if it be the fact that gasoline is liable to drain from garages into sewers and there accumulate in quantities apt to cause explosions, there is no opportu-

nity for debate that the legislature would have the right
to guard against such liability and danger by the adoption
of any reasonable preventative.  The contention of the
appellants that they ought to be allowed to prove and ask
a jury to find that there was not any such danger and
that the proposed preventative was not an effective or
reasonable one, is opposed to the general rule, almost if
not wholly universal in its application.

The legislature is justified in guarding against evils
both real and fairly to be anticipated by any legislation
which reasonably tends to prevent them, and it has a wide
discretion in formulating the means which shall be
adopted to this end.  It is a sufficient basis for legislative
action if only there are reasonable grounds for belief that
the evil may occur, and even though there be "an earnest
conflict of serious opinion on the subject."

There must be a real evil, reasonably to be anticipated
and to be guarded against, and if it appears from the
face of the statute interpreted in the light of common
knowledge that there is no evil or that there is no reason-
able relation between the evil and the proposed remedy, or
that the latter is unduly oppressive and confiscatory, the
courts may pronounce the legislation unconstitutional and
restrain its enforcement.  (*People* v. *Charles Schweinler
Press*, 214 N. Y. 395, 406, 407.)

But if these facts do not appear upon the face of the
statute we are bound to assume that the legislature
has investigated the subject concerning which it is legis-
lating and has acted with reason and not from caprice.
We must start out with the presumption that the legisla-
tion is constitutional and valid, and however the courts
may doubt the wisdom of an enactment they cannot pro-
nounce the same unconstitutional unless able to see either
that there is no real, substantial evil of public interest to be
guarded against, or that there is no reasonable relation
between the evil and the purported cure or prevention
offered by the statute.  (*People* v. *Griswold*, 213 N. Y.

92, 97; *People* v. *Charles Schweinler Press, supra.*) It is not permissible generally to overthrow the presumptions which have been stated and to establish the unconstitutionality of a given act by the introduction of evidence and the verdict of a jury, as has been proposed in this case. (*Powell* v. *Pennsylvania,* 127 U. S. 678; *People ex rel. Kemmler* v. *Durston,* 119 N. Y. 569; *U. S.* v. *Des Moines Nav. & Ry. Co.,* 142 U. S. 510, 544; *Fire Dept. of N. Y.* v. *Gilmour,* 149 N. Y. 453; *People* v. *Cipperly,* 101 N. Y. 634; *Johnson Co.* v. *Beloosky,* 263 Ill. 363; *Landberg* v. *City of Chicago,* 237 Ill. 112; *Stevenson* v. *Colgan,* 91 Cal. 649; *Farmers Loan & Trust Co.* v. *Chi., P. & S. Ry. Co.,* 39 Fed. Rep. 143; *Pittsburg, Cin., C. & St. L. Ry. Co.* v. *State of Indiana,* 180 Ind. 245.)

We are not unappreciative of the fact that it is hazardous to say of any general rule that it can have no exceptions and thus to hold that no case could possibly arise where evidence might be introduced, in respect of the application of a police regulation, for the purpose of showing that it was utterly ineffective or grossly unreasonable in the expenses which it entailed. We are not required on this appeal to assert that proposition and to assume the responsibility which might result from its pronouncement. If we should assume for purposes of discussion that such a case for the introduction of evidence might sometime arise, that occasion does not now confront us. While the affidavits presented in behalf of the appellants on the motion for a writ of mandamus were intended to and did vigorously attack the claims that danger was to be apprehended because of the drainage of gasoline into sewers and that an oil separator was an effective safeguard against such danger, nevertheless, these affidavits on the whole make it perfectly clear that the questions whether such danger did exist and whether such separator would eliminate it if it did exist, were largely questions of opinion and judgment in the decision of which reasonable men might differ, and they make it

apparent that we should not say that there was such an entire absence of possibility of danger and that the proposed remedy was so utterly ineffective that the legislature was without power to adopt the legislation if it saw fit. We must always remember that the limitation upon its right to adopt police measures to avoid dangers is that the latter may fairly be anticipated, although vigorously denied, and that a wide range of discretion is allowed in determining when a possible evil ought to be guarded against and in fixing upon the means by which this shall be done. Applying these principles, this case undoubtedly comes within the rule laid down in the cases which have been cited, that the power and wisdom of the law-making body should not be turned into questions of fact to be passed on by a jury.

We think the order appealed from should be affirmed, with costs.

CHASE, COLLIN, HOGAN and POUND, JJ., concur; CARDOZO, J., concurs in result; CUDDEBACK, J., not voting.

Order affirmed.