C. T. ANDERSON, *Petitioner*, v. O. W. TEDFORD, MARSHAL
OF PANAMA CITY, *Respondent.*

Opinion Filed August 4, 1920.

1. A city ordinance which prohibits the holding of any public
meeting or meeting of any character upon any street of the
city or within any city park without first obtaining permis-
sion in writing from the mayor or a majority of the city
councilmen, in the absence of any charter provision defi-
nitely and specifically empowering the city to prohibit
public meetings in the streets or parks of the city, is void
for unreasonableness.

2. Under the general power granted to municipalities to pre-
serve the public peace and morals and for the suppression
of riots and disorderly assemblies, a city's power over pub-
lic meetings exists when they create public disturbances, be-
come nuisances or create or threaten some tangible public or
private mischief.

A case of original jurisdiction.

Petitioner discharged.

*John D. Trammell* and *Ed Dykes,* for Petitioner;

*J. M. Sapp,* for Respondent.

ELLIS, J.—C. T. Anderson was arrested by O. W. Ted-
ford, Marshal of the town of Panama City, and charged
with violating Ordinance No. 118, prohibiting the holding
of any public meeting or assembly upon any of the
streets or in any of the parks of the city without a writ-
ten permit from the Mayor or a majority of the City
Council. Anderson was adjudged to be guilty by the
Mayor and sentenced to pay a fine of one hundred dol-

lars or serve at hard labor on the streets for twenty days, and was "committed to the town jail" until the judgment of the court should be satisfied.

Anderson applied to a justice of this court for a writ of *habeas corpus,* which was issued, returnable before the court.

Section 1 of the Ordinance No. 118 of Panama City provides that "No person or persons shall hold any public meeting or meetings of any character upon any of the streets of the city or within any of the city parks without first obtaining permission in writing from the Mayor or from a majority of the city councilmen."

Section 2 provides for punishment for a violation of Section one.

Anderson demands his discharge upon the ground that the ordinance is invalid because it is unreasonable, "prohibits the exercise of free speech in the places named therein, is a restraint upon personal liberty," and because it permits certain city officials to discriminate between individuals possessing the same qualifications, rights and privileges as citizens.

This discretion vested in the Mayor or a "majority of the city councilmen" is uncontrolled by any definite and reasonable terms upon which the permit may be granted. Those officials are empowered to grant or withhold permission to hold meetings in the streets or parks of the city without inquiring into the character of persons applying for permit, the purpose of the meeting or assembly, nor its effect upon the business, traffic or peace and quiet of the city, but may for reasons entirely personal grant permission to any person and withhold it from another, and as the religious or political proclivities of the head

of the city administration changes he may grant permission to a representative of one sect and deny it to another, withhold permission from a person of one political faction and grant it to another of different persuasion. Public meetings upon the streets or parks of a city are not necessarily productive of disorder, nor are they so likely to produce danger as to be *per se* producers of public disturbances, nor may they be said to be *per se* nuisances.

The ordinance recognizes this to be true, but it does not fix and determine the conditions applicable alike to all applicants under which meetings may be lawfully held. It merely leaves it to the uncontrolled discretion or caprice of the Mayor or a majority of the city councilmen. Such an ordinance is unreasonable and void. See City of Chicago v. Trotter, 136 Ill. 430, 26 N. E. Rep. 359; Anderson v. City of Wellington, 40 Kan. 173, 19 Pac. Rep. 719, 2 L. R. A. 110; State *ex rel.* Garrabed v. Dering, 84 Wis. 585, 54 N. W. Rep. 1104. In re Frazee, 63 Mich. 396, 30 N. W. Rep. 72.

The charter of the city, which is Chapter 7219, Laws of Florida, Acts 1915, does not contain any provision definitely and specifically empowering the city to prohibit public meetings in the streets or parks of the city, nor to prohibit parades with or without music from passing through the streets without a permit from some city official. The city's power over such movements or assemblies exists where they create public disturbances or operate as nuisances, or create or threaten some tangible public or private mischief. See 19 R. C. L. 849.

The charter provides in general terms that the city may pass ordinances not in conflict with the Constitution of the United States or the Constitution and Laws of the

State, and may exercise such powers and privileges as may be conferred upon cities and towns incorporated under the general law for the incorporation of cities and towns, which authorizes the passage of ordinances for the preservation of the public peace and morals for the suppression of riots and disorderly assemblies and for the order and government of the city or town.

The ordinance in question prohibits "any public meeting or meetings of any character upon any of the streets of the city," etc. It is only when meetings, political, religious, social or of other character, create public disturbances, operate as nuisances, threaten some tangible public or private mischief, prevent the passage of persons to and fro, obstruct traffic or prevent the free use of the streets to the public, that they may be restricted under charter provisions similar to the one under consideration.

The case of Fitts v. City of Atlanta, 121 Ga. 567, 49 S. E. Rep. 793, 67 L. R. A. 803, appears to hold to the contrary, but an examination of that case shows that the ordinance rested upon a charter provision authorizing the city by ordinance to regulate "public meetings and public speaking in the streets of said city of Atlanta by preventing the obstruction of the streets of said city or the gathering of disorderly crowds in said streets." The view we have of the ordinance under consideration is that it is supported by no express legislative authority, nor is there any implied power granted to the city to vest in any of its officials such arbitrary and uncontrolled discretion in the matter of restraining or permitting the holding of what may be a perfectly legitimate, lawful and beneficial meeting interfering with the rights of no other person and productive of no mischief, danger or disturbance.

All laws and regulations to be valid for any purpose must be capable of construction, but this ordinance is incapable of construction. If Mr. B. is Mayor the meeting may be had; but if Mr. C. is Mayor it may not be. In the one case it may be an offense, in the other not. It makes it possible for an official in the name of law to violate recognized principles of legal and equal rights. In some municipalities governed by what they claim to be a superior system for regulation of municipal affairs, the entire business portion of the principal streets are so completely given over to use by the owners of a certain class of vehicles for parking and repairs as often to block the streets and render the use of them by the public often impossible and usually difficult and dangerous. In comparison with such practice it would seem that a meeting of a few citizens upon a street corner to discuss some social, political or religious topic would be too insignificant to be noticed.

The ordinance is void for unreasonableness. The prisoner is unlawfully restrained of his liberty, and it is ordered that he be forthwith discharged from custody of the respondent.

TAYLOR, WHITFIELD AND WEST, J. J., concur.

BROWNE, C. J., not participating.