### City of Pineville v. Marshall, et al.

(Decided November 22, 1927.)

Appeal from Bell Circuit Court.

1.  Municipal Corporations.—Under powers enumerated in Ky. Stats., sec. 3490, subsecs. 1, 7, 33, 3562, general council of city of Pineville was authorized to enact ordinance prohibiting person or group of persons from appearing on streets, alleys, or public ways wearing masks or other disguise so as to conceal identity of person or persons so wearing them, within constitutional limitations, and

ordinance had same effect within city limits as that of legislative act.

2. Constitutional Law.—Legislature had constitutional right to delegate power under Ky. Stats., sec. 3490, subsecs. 1, 7, 33, 3562, to city to enact ordinances prohibiting persons appearing on streets, alleys or public ways wearing masks or other disguise to conceal their identity.

3. Constitutional Law.—Ordinance of city of Pineville prohibiting persons from appearing or traveling on streets, alleys, or public ways, wearing masks or other disguise to conceal their identity, held not to conflict with Constitution, sec. 1, subsec. 2, relating to right of worshipping God, and subsection 4, relating to freedom of speech.

4. Constitutional Law—Ordinance of city of Pineville prohibiting persons from appearing or traveling on streets, alleys, or public ways wearing masks or other disguise to conceal their identity, held not to violate Constitution, sec. 1, subsec. 6, relating to right of assembling together in peaceable manner for common good, since this right is not an absolute right to be exercised at all times and places, and without regard to rights of others.

5. Constitutional Law.—While Bill of Rights declares and secures certain inherent rights, it does not create them, nor does it license an individual to ignore or defy correlative rights of indviduals or of soceity.

6. Municipal Corporations.—Streets and public ways are dedicated to public use, and individual has no proprietary interest therein save as a member of general public.

7. Municipal Corporations.—General council is given exclusive power to enact reasonable regulations for streets and public ways of city for common use, and, so long as these are neither unreasonable, arbitrary, oppressive, or discriminatory, they will be upheld.

8. Municipal Corporations.—Ordinance of city of Pineville, denouncing as disorderly person any one who appears or travels on streets or public ways masked or disguised so as to conceal his identity, whether done singly or in groups, held not invalid as discriminatory, since appearing and traveling on streets disguised are proper subjects for police regulation; term "disorderly conduct" being commonly used to designate an offense below grade of common-law misdemeanor, but it is broader term than that of breach of peace or nuisance, and includes words and actions tending to disturb peace or endanger morals, safety, or health of community.

E. B. WILSON for appellant.

ED PHILPOT and T. H. TAYLOR for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Appellees, 26 in number, were tried and convicted in the police court in the city of Pineville, a city of th'

fourth class, on a warrant charging them with a violation of the ordinance set out infra, and upon an agreed stipulation of fact not appearing in this record; it being stated in brief that at the time of their arrest they were marching peaceably in a parade. On appeal to the circuit court the learned judge sustained a demurrer to the warrant on the ground that the ordinance was invalid. The city has appealed for the purpose of testing the validity of the ordinance.

The ordinance is in these words:

"That it shall henceforth be unlawful for any person or group of persons to appear or travel upon any of the streets, alleys or public ways of the city of Pineville, Kentucky, wearing masks or other disguise so as to conceal the identity of the person or persons so wearing same, . . . and any person who shall in violation hereof so mask or conceal his identity on any of the streets, public ways or alleys of the said city, shall be deemed a disorderly person and shall be forthwith arrested. Upon a conviction of a violation hereof he or they shall be fined in any sum not exceeding $15.00 for each offense."

The warrant reads:

"It appearing that there are reasonable grounds for believing that Sallie Marshall and others whose names are attached hereto, have committed the offense of unlawfully appearing and traveling upon the streets, alleys and public ways of the city of Pineville, Ky., wearing masks so as to conceal the identity of the said persons, on or about March 17, 1927, and thereby disturbing and annoying the general public and by causing general disturbance in the city of Pineville in the county of Bell, state of Kentucky, you are therefore commanded to arrest said party and bring him before the Pineville police court to be dealt with according to law."

The city charter authorizes the board of council "to pass ordinances not in conflict with the Constitution nor laws of this state nor of the United States," section 3490, subsec. 1, Ky. Statutes; "to . . . define and declare by ordinance what shall be a nuisance within the limits of the city, and to punish by fine any person for causing or permitting a nuisance," subsec. 7, Id; "to

make by-laws and ordinances for the carrying into effect of all the powers herein granted for the government of the city, and to do all things properly belonging to the police of incorporated cities," subsec. 33, Id. It is further given "exclusive control and power over the streets, roadways, sidewalks, alleys, landings, wharves, public grounds and highways of the city," section 3562. And the police court is given jurisdiction "over affrays, riots, routs, breaches of the peace, unlawful assemblies, cases of indecent or immoral behaviour or conduct calculated to disturb the peace and dignity of said town," sec. 3513.

1. Under the broad powers above enumerated the general council is authorized to enact ordinances of this character within constitutional limitations, and, as the Legislature had the constitutional right to delegate this power, the ordinance must be given the same effect within the city limits as that of a legislative act. Commonwealth v. Davis, 162 Mass. 510, 39 N. E. 113, 26 L. R. A. 712, 44 Am. St. Rep. 389; Id., 167 U. S. 43, 17 S. Ct. 731, 42 L. Ed. 71; People, etc., v. Atwell, 232 N. Y. 96, 133 N. E. 364, 25 A. L. R. 107, and notes; Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490; Stubbe v. Anderson, 220 N. Y. 459, 116 N. E. 372; Anderson v. Tedford, 80 Fla. 376, 85 So. 673, 10 A. L. R. 1481, and notes.

2. Obviously the ordinance does not restrict the right to worship God according to the dictates of one's own conscience, nor abridge freedom of speech; hence it does not conflict with subsections 2 and 4 of section 1 of the state Constitution, as claimed by appellees. But it is said to violate subsection 6 of that section, and counsel asks:

"Under what authority can the city assume the prerogative to enact a law to prevent an orderly parade or peaceable assembly on its streets?"

Answering that question, admittedly the Constitution secures to the people the right of "assembling together for their common good." And the right of such assemblages to march in military order as in a parade has been exercised so long as to be deemed inherent; however this is not an absolute right to be exercised at all times and places and without regard to the rights of others, and it would not be contended that such acts could be exercised on private premises without the con-

sent of the owner.  As to public ways, formerly when travel was comparatively light and equipages few, public meetings and parades on the streets of a city interfered but little with their ordinary use, and were of frequent occurrence; their appearance being accepted as a matter of course.  But under modern traffic conditions, especially since the advent of the motor vehicle, city streets are frequently, if not generally, congested, and, if further burdened with unregulated public meetings and parades, all traffic might become obstructed, and the use of the streets denied to the public for an unreasonable length of time, and an intolerable situation develop. However, the genius of our fundamental law is proven in its adaptability to all conditions.  While the Bill of Rights declares and secures certain inherent rights, it does not create them nor does it license an individual to ignore and defy the correlative rights of other individuals or of society.  Streets and public ways are dedicated to public use.  The individual has no proprietary interest therein save as a member of the general public. And in the interest of the whole people the general council is given exclusive power to enact reasonable regulations for the streets and public ways of the city for common use, and, so long as these are neither unreasonable, arbitrary, oppressive, nor discriminatory, they will be upheld.

3. It is intimated, however, that the ordinance is intended to prohibit a certain class of meetings and parades without reference to others who may so use the streets.  In this respect it will be observed that the ordinance denounces as a disorderly person ''any one who appears or travels upon the streets or public ways of the city masked or disguised so as to conceal his identity, whether this is done singly or in groups.''  Admittedly this is sufficiently comprehensive to embrace masked meetings and parades, and does not include other forms of meetings and parades.  But the ordinance is not on that account discriminatory, if ''appearing'' and ''traveling'' upon the streets *disguised* are punishable as public offenses, and its validity turns upon this question.  ''Disorderly conduct'' is a term commonly used in municipal ordinances and sometimes in statutes to designate an offense below the grade of a common-law misdemeanor .  It is a broader term than that of a breach of the peace or nuisance.  It may include either of these, but it also embraces conduct and words not constituting

a breach of the peace or nuisance. It is not capable of exact definition; a good statement being:

> "Under modern statutes and ordinances relating to disorderly conduct it may be said in general that words and acts which tend to disturb the peace or endanger the morals, safety or health of the community or of a class of persons or family are punishable."

See 18 C. J. 1216, and cases cited illustrating the rule.

Intent may or may not be an ingredient according to the language of the ordinance and the character of the offense denounced. See Id. 1218.

Considering the purpose and effect of the ordinance, it may be assumed that Halloween celebrations and other masked parades of like character, as well as parades by secret organizations who are masked and hooded, are conducted innocently. But experience has proven that in the large towns and cities evil-minded persons in disguise mingle with the other maskers, and apply the vocation of pickpocket with impunity. Masked bandits infest the public highways and streets, rob travelers, banks and business houses, and escape detection and punishment by concealing their identity. If every one is permitted to go disguised upon the streets of a city or town, the innocent and unwary may fall easy victims to the criminal and vicious, and peace officers be powerless to afford protection, unless a crime is committed in their presence and the offender then seized. Clearly a disguise is a shield and protection to the criminal, and, in the absence of a regulatory measure, innocently conducted masked parties and parades, as well as masked individuals, traveling upon the streets afford encouragement to the vicious and criminal, and in this way promote crime and disorder, and tend to endanger the safety, and disturb the peace, of the community, and therefore are a proper subject for police regulation. As the ordinance is not violative of any constitutional provision, it follows that the lower court erred in holding it invalid. To that extent, and no further, the judgment of the lower court is reversed.