Fox Meadow Estates, Inc., Plaintiff, *v.* William S. Livingston, as Building Inspector of the Village of Scarsdale, Defendant.

Supreme Court, Westchester County, April 25, 1930.

*Clark, Close & Davis* [*William D. Cunningham* of counsel], for the plaintiff.

*William Cravath White* [*Nathan L. Miller, Humphrey J. Lynch, Edward M. Bassett* and *John H. Jackson* of counsel], for the defendant.

Morschauser, J. The proceeding was begun by the usual petition and order to show cause for either a peremptory or an alternative order. The defendant, by his answering affidavits, raised an issue whereupon the usual procedure was taken, viz.,

an alternative order was issued and the defendant made a return thereto. The return denies the allegations of the petition, that the defendant's refusal is arbitrary, unreasonable, discriminatory and unlawful and denies that it is in violation of the Constitution of the State of New York and of the United States. The allegation in regard to the building code, which is also attacked, alleging that the code was not lawfully adopted, is denied and denial is likewise made that the code is harsh, unjust, unreasonable, discriminatory and unconstitutional. In addition the defendant sets up various defenses.

The issues in the case involve the validity of the zoning ordinance of the village of Scarsdale and the validity of the building code of Scarsdale requiring all apartment houses to be fireproof.

Scarsdale is a village, the boundaries of which are coterminous with the town boundaries. On the north lies the city of White Plains; on the east is Mamaroneck and on the south the city of New Rochelle and the town of Eastchester and on the west lies the town of Greenburgh. The village is located about twenty miles from the city of New York. It has an area of about 4,000 acres. It is served by two railroads, the Harlem Division of the New York Central, which runs along its westerly boundary line, and the Westchester and Boston, which, roughly, runs along its easterly boundary line.

The principal highways running north and south are the New York Post road, which extends from New York city to White Plains, and the Bronx parkway, which extends from Bronx park in the city of New York northerly to Kensico dam. The principal highway running east and west is Fenimore road. This enters Scarsdale just south of the Hartsdale station and extends easterly to Mamaroneck.

In the village proper there are two railroad stations, Scarsdale station on the Harlem Division and the Heathcote station on the Westchester and Boston. The northerly portion of the village is served by the Hartsdale station on the Harlem Division. This station is just west of the Bronx river (the westerly boundary line of the town and village of Scarsdale.)

In the town of Greenburgh on the westerly side of the Bronx river, for almost the entire length, there is a precipitous bluff. This bluff is very sharp and of great height and is immediately west of the property in question. During the trial it was stipulated that the court might visit the village and the premises and take into consideration, in deciding the case, what the court observed.

The premises involved in this proceeding are a portion of a large tract formerly known as the Butler estate. This entire estate was

purchased by the petitioner in the latter part of 1924. It originally consisted of 368 acres or almost one-tenth of the entire area of the village. Exclusive of the streets and other lands conveyed to the village for streets and municipal purposes, there remain 300 acres. In 1924 this large tract was unimproved. After the petitioner purchased it various improvements were installed. The land was drained, sewer, water and gas installed, roads paved and dedicated to the village, all at the expense of the petitioner.

The eastern portion of the village is sparsely settled, the greater part of the development in that section being contiguous to the Heathcote station. The premises involved here are located along the westerly border of the village and bounded on the east by a highway known as Fox Meadow road; on the west by the Bronx parkway, and are a portion of a strip of land designated on the original map of the entire tract, which is bounded on the north by Fenimore road and on the south by Ogden road and marked " Reserved." This reserved tract contains about fifteen acres and is approximately 500 feet wide and has a length of about 2,400 feet. The petitioner whenever it sold any lots for private dwellings has restricted the lots so sold, but by express provision in all the deeds it has provided that the area marked " Reserved " shall be exempt from the restrictions.

The evidence and my own observation establish that the particular plot in question is located about 1,000 feet south of Fenimore road. It is about 30 feet from the paved portion of the parkway; 200 feet to the west lies the New York Central railroad tracks. The proposed building would be set back about 170 feet from Fox Meadow road and the nearest lot shown on the subdivision, available for a private dwelling, is about 250 feet. The nearest dwelling now erected is more than 800 feet from the proposed buildings. Directly west and across the Bronx river and the New York Central railroad tracks a precipitous bluff arises. This height of land would be greater than the elevation of the proposed apartments.

Scarsdale may well be designated as a unique neighborhood. Some of the most expensive and most beautiful dwellings in the entire village are located in the tract developed by the petitioner. The development in the residential section is similar to other well-known residential communities such as Bronxville, Pelham Manor, Scarborough and other similarly situated villages.

The zoning ordinance adopted created three residential districts, "A," " B " and " C " and one business district " A." The use in residence "A" was limited to single family dwellings; residence " B " to not more than two families and residence " C " permitted

apartments. The proposed apartment site is in the area included in the residence "A" district.

It must be conceded that the Bronx parkway is one of the most intensively used highways leading from and to the city of New York. The evidence disclosed that between 30,000 and 40,000 cars per day, with the accompanying noise, passed over this highway. The evidence further discloses, and my observation convinces me, that property abutting on this driveway is not suitable for single family dwellings.

At Scarsdale station there is considerable property zoned for business and apartments both on the east and west side of the railroad. A similar situation exists at the Heathcote station. At the Hartsdale station, the town of Greenburgh permits business and apartments in the vicinity of the station but it is forbidden on the Scarsdale side of the boundary line although it is estimated that seventy-five per cent of the people who use this station are from Scarsdale or from the Scarsdale side. The number of commuters who use the two stations is approximately the same.

It is interesting to note that the village of Pelham Manor, which is similar in development to Scarsdale, has allocated nine per cent of its area for apartments, the village of Rye about seven per cent, Pelham about three per cent, while Scarsdale has allocated less than four-tenths of one per cent and this area is all contiguous to the Scarsdale and Heathcote stations. In fact, the evidence discloses that Scarsdale is not and cannot be self-sustaining under its present zoning ordinance and it would seem to be self-evident that proper zoning would require each area to be self-sustaining.

The proposed apartments are beautiful and artistic in design. The public facilities, such as water, sewer, etc., are adequate. These, I believe, are admitted by the village, the village basing its defense solely upon its right to exclude all apartments from this particular territory.

The defendant contends that the petitioner cannot succeed in so far as its attack upon the zoning ordinance is concerned, because it did not first apply to the board of appeals. The procedure taken herein is proper. (*Matter of Isenbarth* v. *Bartnett*, 205 App. Div. 845; 206 id. 546; *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280; *Matter of Hillsley Realty Corporation* v. *Vroman*, 218 App. Div. 855.)

The zoning ordinance herein involved limits the use of the petitioner's property to one-family houses. If this is a valid ordinance the petitioner must submit. If it is unreasonable and discriminatory — not part of a comprehensive plan — the ordinance must give way to the constitutional rights of the petitioner. This

is equally true if it is unduly oppressive and confiscatory. (*Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.)

Whether an ordinance is valid or not must depend upon the circumstances in each case. (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Village of Euclid* v. *Ambler Realty Company*, 272 U. S. 365.) The test is whether the ordinance is designed "to accomplish a legitimate purpose." Scarsdale by this ordinance has set apart something less than one-half per cent for apartment houses and this area is all located in the vicinity of two out of the three railroad stations that serve the village.

If it were possible to get a birdseye view of these three stations, at two of them we would find land similarly situated in relation to the station, zoned for a similar use, that is, in the immediate vicinity of Scarsdale and Heathcote stations land is zoned for business purposes and other lands, further removed from the stations, are zoned for apartments. At Hartsdale we find these premises, which are similarly located to apartment-zoned land at Scarsdale station, restricted to one-family houses.

It is apparent to me that this ordinance is discriminatory, is not a part of a comprehensive plan and is unduly oppressive and confiscatory. An ordinance which places property similarly situated in widely different zones cannot be held to be valid or part of a comprehensive plan. Another argument that has the greatest weight in this case is that as the village is now zoned certain interests have control, not only of all the property zoned for business and apartments, but of property abutting thereon with the unusual power granted to the board of appeals to set aside the ordinance in so far as it affects the abutting property.

I find that the zoning ordinance attacked was not adopted in conformity with the provisions of the Village Law and is void as to the petitioner and its premises.

The building code and ordinances of the village of Scarsdale require that all apartment buildings must be fireproof. The petitioner takes the position that this ordinance is unreasonable, discriminatory and void as to the petitioner and further attacks the ordinance upon the ground that it was not adopted in accordance with the Village Law.

The ordinance, in so far as we are concerned with it, provides as follows: "Buildings to be fireproof. Fireproof construction; Group 1 (B) Tenement Houses—Apartment House." That is, every apartment house, no matter where it is situated, of what height, size or capacity, must be fireproof. A situation might arise, under this ordinance, where a building so constructed as to house three families, or even three people, must be fireproof. This ordinance

does not in any way define what an apartment house or tenement house is, although in other parts of the code dealing with other structures, it defines them with great particularity.

What is the test of reasonableness when applied to an ordinance? It seems to me that the test that must apply is what other municipalities similarly situated do. No other municipality, according to the record, in the United States has any such onerous ordinance as this. One can easily understand the necessity of buildings of a certain height or over a certain height being fireproof or buildings housing a certain number of families, but we have no such ordinance here and it seems to me that this creates that discrimination for which a court of equity will grant relief.

The evidence in this record convinces me that the purpose of this alleged ordinance is not for protection but to make the erection of apartment houses difficult and expensive. It is an example of the exercise of police power ostensibly for the purpose of promotion of what might be a worthy object, while, in reality, it is an invasion of property rights for a distinct and wholly different purpose.

The history of the adoption of this ordinance is peculiar. It was first adopted in 1923. Apartment houses were placed in " Group 1 (B) " and required to be fireproof. This was apparently an oversight, for a few weeks later the ordinance was amended so that " Group 1 (B) " might be of ordinary construction. The ordinance, as so amended, remained in force until the day before the petitioner filed its plans. The petitioner's architect had been in frequent consultation with the defendant's building inspector and at seven-forty-five in the morning of January 27, 1927, the board of trustees attempted to hold a special meeting and amend the ordinance to place " Group 1 (B) " again in the fireproof class. All the trustees were not present and there is no evidence that notice of the meeting was given to the trustees. On March 22, 1927, the board of trustees again attempted to amend the ordinance by inserting the same provision as to being fireproof. The vote taken at neither meeting was in conformity with the Village Law. (Village Law, § 90-a, added by Laws of 1910, chap. 202, as amd. by Laws of 1926, chap. 718.)

When the petitioner filed its plans the building permit was refused on the ground that the plans constituted a violation of the " Building Zone Ordinance " and it was not until several days later that the petitioner was informed that the plans did not comply with the fireproofing requirement.

I do not see how this legislation can be considered as a *bona fide* attempt to promote public safety through the fireproofing of apartment houses. It is apparent that it was passed to meet this

specific situation and to raise an additional barrier before this petitioner.

The court is not bound to accept this legislation at its face value but can look behind it to see what the real purpose was. The ordinance is discriminatory in its failure to classify apartments according to their size, height, etc. It was adopted as a stop gap and is void.

I find for the plaintiff, with costs. Present findings.