CARROLL, Judge
(dissenting).
The City of Miami Beach denied the use of one of its public parks to the Emma Lazarus Organization of Miami Beach, which had requested it for the stated object of holding a meeting to commemorate the death of Emma Lazarus. On behalf of the organization, two of its members who were its president and secretary obtained the issuance of an alternative writ of mandamus to compel the city to permit its use of the park on the requested date of November 19, 1960, or on some other date suitable to the city and to relators after the end of the litigation.[1] The city an *350 swered denying that its action in refusing use of the park was “arbitrary, capricious and unreasonable,” and averring that it was the policy of the city to limit public use of the park and that on a prior occasion when this organization was allowed the park it held a riotous meeting.[2] Following trial, the court entered an order quashing the alternative writ,[3] and relators appealed.
The refusal of the city to allow the Emma Lazarus Organization the use of the park was an arbitrary and unlawful act, in that it denied to the members the equal protection of the laws and deprived them of rights without due process of law in violation of state and federal constitutional guarantees.
Having no charter provision or ordinance relating to and controlling the issuance of permits for use of the park for public meetings, the city could not refuse the requested public use of its park. This proposition was set at rest by the Supreme Court of the United States in the case of Niemotko v. State of Maryland, 340 U.S. 268, 71 S.Ct. 325, 328, 95 L.Ed. 267, where it was said:
“This Court has many times examined the licensing systems by which local bodies regulate the use of their parks and public places. See Kunz v. New York, decided this day, 340 U.S. 290, 71 S.Ct. 312, 328. See also Saia v. New York, 1948, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574; Hague v. C. I. O, 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Lovell v. Griffin, 1938, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949. In those cases this Court condemned statutes and ordinances which required that permits be obtained from local officials as a prerequisite to the use of public places, on the grounds that a license requirement constituted a prior restraint on freedom of speech, press and religion, and, in the absence of narrowly drawn, reasonable and definite standards for the officials to follow, must be invalid. See Kunz, 340 U.S. 290, 71 S.Ct. 312, 328. In the instant case we are met with no ordinance or statute regulating or prohibiting the use of the park; all that is here is an amorphous ‘practice/ whereby all authority to grant permits for the use of the park is in the Park Commissioner and the City Council. No standards appear anywhere; no narrowly drawn limitations; no circumscribing of this absolute power; no substantial interest of the community to be served. *351 It is clear that all that has been said about the invalidity of such limitless discretion must be equally applicable here.”
See, in addition to the cases cited in the above quotation from the Niemotko case, Anderson v. Tedford, 80 Fla. 376, 85 So. 673, 10 A.L.R. 1481; Danskin v. San Diego Unified School Dist., 28 Cal.2d 536, 171 P.2d 885. See also Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, 1102; Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, 1053.
Even under an ordinance controlling the issuance of permits upon definite and reasonable standards and terms, use of a public park may not be denied for the reason set out in the city’s answer, which was that on a prior occasion the applicants’ use resulted in a riotous meeting. First, the proofs failed to sustain the city’s averment of the prior riotous meeting. No record of an event of that character was available to be produced. The city’s witness who testified on the point did not recall the year such meeting was held; and what was shown was that subsequent to the meeting the city had “received several complaints by phone.” The only other matter disclosed by the record which could bear on the city’s basis for refusal was equally insufficient for that purpose. It was a hearsay indication that the organization for which the park was requested was allied with some subversive organization. This was arrived at by submitting a clipping from some out-of-state news organ which indicated that a Los Angeles chapter of the Emma Lazarus Organization was affiliated with some other organization there which had found its way onto the attorney general’s subversive list of April 1, 1954. As to this latter point, not only was' the evidence lacking in quality or substance, but the matter was not pleaded in the city’s answer, nor was it made the basis of a finding by the court. Moreover, had the implication of such hearsay evidence been an established fact, that, without more, would not have served as a ground to deny use of the park. DeJonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278. See Danskin v. San Diego Unified School Dist., supra. And even if the city had reliable advance information that the intended meeting would incite persons to riotous or unlawful action, the use of the park could not be denied for that reason, but rather its use should be granted and the meeting policed, to be stopped only when disorder actually impended. Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. See American Civil Liberties Union v. Board of Education, 10 Cal.2d 647, 359 P.2d 45; Rockwell v. Morris, 12 A.D.2d 272, 211 N.Y.S.2d 25. See also Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430. Free expression, which is the object of such a public meeting, should not be denied or suppressed by prior administrative restraint because of contemplated violation of law. Such expression may become the basis for punishment by judicial process after the fact, for what has been said. Denying prior restraint creates some risk, but it is a price to be paid for liberty while order is to be preserved by the sanction of punishment after the fact.
Nor was there merit to the contention of the appellee that mandamus was not an appropriate remedy. True, the city had no charter provision or ordinance calling for the issuance of such permits. But the city had made its own policy for handling such applications and had established the practice of issuing permits to applicants as a condition for such use of the park. Thus, because of the city’s adopted mode of operation the applicant could not use the park without a city permit. Therefore, the city could be mandamused to grant the permit which it could not lawfully refuse. See Rockwell v. Morris, supra, 211 N.Y.S. 25, 29-30; American Civil Liberties Union v. Board of Education, supra.
For the foregoing reasons I am of the opinion that the order quashing the alterna- *352 five writ should be reversed, and the cause remanded with directions to enter judgment awarding to relators a peremptory writ of mandamus; and I therefore respectfully dissent.

. An earlier mandamus action relating to use of the park on a specified date had been determined adversely to the relators as being moot when the cause ran past the date. But see Rockwell v. Morris, 12 A.D.2d 272, 211 N.Y.S.2d 25.

. The answer of the city was as follows: “For return to the alternative writ of mandamus heretofore issued herein the City of Miami Beach, respondent, says:
“1. It is without knowledge of the allegations in Paragraph 1 of said writ.
“2. It admits the allegations of Paragraph 2 thereof.
“3. It denies the allegations of Paragraph 3 thereof.
“4. It denies the allegations of Paragraph 4 thereof.
“For further return to the said writ the respondent says that the said premises known as Flamingo Park are owned by the respondent in a proprietary capacity and that it has heretofore adopted, and now does, follow the policy of permitting the use of the said premises to a limited type of public use such as political rallies and patriotic assemblages or national holidays such as the Fourth of July; that the respondent at one time permitted the plaintiff organization to use the said premises but the meeting so held was riotous, viola-tive of public peace and order and constituted an incitement to riot.”

. “This cause having duly come to be heard before me and the Court having heard testimony of the witnesses and being fully advised in the premises; and the Court being of the opinion that it does not have the authority to substitute its judgment in this controversy for that of the administrative officials of the City of Miami Beach, Florida, it is therefore,
“Ordered and Adjudged:
“That the within Alternative Writ of Mandamus be and the same hereby is quashed and the Petition for Writ of Mandamus be and the same hereby is denied.”