THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT JOHN YOUNG, Appellant.

Fourth Department, December 5, 1974.

*Peter L. Yellin* (*Leslie A. Bradshaw* of counsel), for appellant.

*Jack B. Lazarus, District Attorney* (*Edward J. Spires* of counsel), for respondent.

GOLDMAN, J. Defendant appeals from a conviction, upon his plea of guilty, of a class D felony of criminal possession of a controlled substance in the sixth degree, for which he could have been sentenced to a maximum term of seven years. He was sentenced to an indeterminate term with a maximum of four years and has begun serving that sentence in Attica Correctional Facility.

This case sharply focuses on the drug problem and the consequences of narcotic involvement. Defendant is a young man presently 22 years of age who has demonstrated in his academic work that he is above average intelligence. Upon graduation from high school he secured a State scholarship and entered a fine local university where his work was of such excellence that he maintained a "B" average and was on the dean's list. His goal was to obtain a bachelor of science in business administration with a major in accounting, and at the time of his arrest he lacked three courses to obtain his degree.

When defendant was arrested the authorities found in his room and seized several plastic bags containing marijuana, a paper bag containing one pound of marijuana and drug paraphernalia. Approximately two years (on January 28, 1972) prior to the indictment upon which he was convicted he was arrested and charged with possession of a dangerous drug in the third and sixth degrees. In an effort to help defendant the court adjourned the case " in contemplation of dismissal ". It was explained to defendant why he was being given this " break " and he was told that " if you are free of narcotic drugs * * * you have to behave yourself and keep out of trouble " until the adjourned date, the charge would be dis-

missed. On his last appearance on that charge before the court on June 26, 1972, on a representation that he had complied with the conditions, the indictment was dismissed. From the admissions made by the defendant to a probation officer it appears that he had in fact continued to use drugs, principally marijuana, during the period of the adjournment but the court had no knowledge of this. The day after he was released on bail on his plea of not guilty of the charges involved in this appeal he was again arrested for possession of marijuana.

Upon the date set for trial defendant withdrew his plea of not guilty and, with the consent of the District Attorney, pled guilty to possession of a controlled substance in the sixth degree in full satisfaction of all counts of the indictment and in satisfaction of the offense committed the day after his original plea. The indictment which resulted in his Attica sentence was for two counts of possession of a controlled substance in the sixth degree, two counts of possession of controlled substance in the seventh degree and possession of a hypodermic instrument.

As a part of the presentence investigation the Probation Department asked the New York State Drug Abuse Control Commission Center Intake Unit for an evaluation of defendant's case. No medical examination was made because none had been directed by the sentencing court. The commission's counselor stated that in his opinion " this subject is in need of residential treatment for his long term drug dependence ". The counselor further recommended that defendant " be sentenced to probation with the condition that he receive in-patient care with the Drug Abuse Control Commission (DACC) for a period to be determined by the Commission which shall not be in excess of one year unless extended by the court ". (Penal Law, § 65.10, subd. 4, par. [a], cl. [ii].) The commission consented to provide such treatment on an in-patient basis if so directed.

The sentencing minutes indicate that the Trial Judge examined the defendant at some length on the question of drug involvement. The court said " well, you are into drugs pretty good, marijuana, speed, pot, acid, mescaline, Seconal, amphetamines, barbiturates ". The defendant admitted that he had used all of these drugs in the past but that his present addiction is principally to marijuana. As a matter of discretion the court could have ordered a medical examination and could have proceeded in accordance with section 81.21 of the Mental Hygiene Law (*People* v. *Carter*, 31 N Y 2d 964). The court apparently determined not to order a medical examination and sentenced the defendant to Attica Correctional Facility.

After his plea of guilty defendant admitted that he has had extensive drug involvement which has been on-going for the past six years and which had led to the use of marijuana as a daily habit. During the six years of drug involvement he has used LSD and PCP (hallucinogens), mescaline, Seconal, and an assortment of "ups" and "downs" which included amphetamines and barbiturates. He also stated that he had "snorted" heroin on four occasions. He had tried counseling at a local drug addiction center but terminated his treatment after one visit. He gave indication that he had a lack of ambition which stemmed from his extensive drug involvement and said that drugs had been a part of his daily life for the past six years, since he was 15 years old. He blamed his drug involvement on the free time he had and upon his peers who were using drugs. He gave the probation officer the impression that he had no desire for positive change to remedy his illegal habit and admitted that he was still using marijuana at the time of the interview.

Although one of the penalties for criminal action is punishment of the individual, the principal aim of the law is to rehabilitate offenders and to return them to society as useful law-abiding members. The sentence given violators should, so far as possible, fit the offender as well as the crime. Defendant, in the judgment of DACC, is a "soft drug" addict and although he has experimented with almost the entire panoply of drugs, his addiction is to marijuana. Although substantial research and writing has been done in the area of psychopharmacology, we are far from the final judgment as to the physical or psychological effects of marijuana upon the user. One fact is clear — it is illegal to use it except, of course, unless medically prescribed. The best illustration of its effect on one user is what it has done to defendant. By his own admission it has stripped him of ambition and he has cultivated such a dependence upon the drug that he cannot refrain from daily use.

The defendant's future rests entirely in his own hands and head. There are resources which have assisted others and which will try to help him, but unless he has the resolve and the motivation to "kick the habit", no agency or resource will be of assistance to him. His salvation must come from within him, with the assistance of resources specially trained to help him shape his own destiny.

The Legislature of this State, after research and study, has acted wisely in the enactment of section 81.01 of the Mental Hygiene Law. It recognized the "human suffering and social

and economic loss caused by drug abuse " and in subdivision (c) has provided a program which we believe should be followed in the effort to rehabilitate this defendant. We quote: " Experience has demonstrated that drug dependent persons can be rehabilitated and returned to useful lives only through periods of treatment in a controlled environment followed by supervision in an aftercare program. The purpose of this article is to provide a comprehensive program of human renewal of drug dependent persons in rehabilitation centers and aftercare programs. The comprehensive program provided by this article is designed to assist the rehabilitation of drug dependent persons. It applies to drug dependent persons who are not accused of crime, as well as narcotic addicts accused or convicted of crimes. The program is further designed to protect society against the social contagion of drug abuse and to meet the need of drug dependent persons for medical, psychological, and vocational rehabilitation, while safeguarding the liberty of individuals against undue interference." Such a program should strengthen the defendant's code of values and give him an opportunity to assess the consequences which will surely flow from his refusal to change his life style.

Defendant is presently incarcerated in Attica Correctional Facility and has experienced what is facing him in the future if he does not resolve to make an earnest and determined effort to free himself from drugs. We can only hope that by giving him an opportunity to be treated at a drug center, rather than incarcerated in a maximum security prison, he will reach out to achieve the fine potential which his intelligence makes possible. The defendant has been given opportunities for change but he has rejected all of them. He will make the decision of whether the future will bring him a normal fruitful life or the life of a prisoner. We shall give him this opportunity by modifying the sentence and ordering his release from Attica and by committing him to the custody of the New York State Drug Addiction Control Commission for in-patient treatment.

Upon this appeal defendant has for the first time challenged the constitutionality of felony treatment for possession of marijuana. He contends in an excellent brief submitted by Mr. Bradshaw of the Public Defender's staff, that classifying possession of a sufficient quantity of marijuana as a class D felony, carrying a maximum penalty of seven years, is a violation of the Eighth and Fourteenth Amendments, that it amounts to cruel and unusual punishment and is a denial of equal protection. The People defend constitutionality and contend that the statute

properly falls within the right of each State to legislate provisions for the health, morals and safety of its citizens and for the common good (*People* v. *County Transp. Co.*, 303 N. Y. 391, 399, app. dsmd. 343 U. S. 961). This right, respondent asserts, is a legitimate and necessary exercise of the police power in the adoption of measures reasonably necessary for the protection of the welfare of our State (*Defiance Milk Prods. Co.* v. *Du Mond*, 205 Misc. 813, affd. 285 App. Div. 337, affd. 309 N. Y. 537, 541). In construing the statute "we have been guided by the familiar principle of our jurisprudence that the courts are reluctant, and it is only as a last resort, that they will strike down a solemn legislative enactment on the ground that it is unconstitutional" (*Matter of Ahern* v. *South Buffalo Ry. Co.*, 303 N. Y. 545, 555).

There are several precedents which have considered the constitutionality of statutes classifying marijuana possession as a felony. In *People* v. *Reisman* (29 N Y 2d 278) the Court of Appeals affirmed a class C conviction for marijuana possession. The Supreme Court of California, in considering an attack on a statute dealing with indecent exposure on Eighth Amendment grounds, stated the principle which should be followed in deciding whether a statute exceeds constitutional limits. In *Matter of Lynch* (8 Cal. 3d 410, 423-424) it said: "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty ' out of all proportion to the offense '." Courts should not lightly strike down a legislative enactment. " Choosing the grades to be assigned to a wrongdoing is a legislative function. * * * courts must leave to the Legislature the consistency or logic of the classification " (*People* v. *Harvey*, 307 N. Y. 588, 591). The Supreme Court considered the degree of punishment in its relationship to the Fourteenth Amendment in *Pennsylvania* v. *Ashe* (302 U. S. 51, 55). It held that the " comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for its [legislature] determination ". In a later decision the court reaffirmed its position (*Morey* v. *Doud*, 354 U. S. 457) that in the exercise of the police powers there is a wide scope of discretion and a statute would not offend the Fourteenth Amendment unless it is purely arbitrary

and without any reasonable basis. Appellant has failed in his burden to show that the statute under attack does not rest upon any reasonable foundation. (*Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 60; *Tyson & Brother* v. *Banton,* 273 U. S. 418, 445; *Commonwealth* v. *Leis* [and five companion cases], 355 Mass. 189; *Rener* v. *Beto,* 447 F. 2d 20.)

It is axiomatic that a strong presumption of constitutionality attaches to all legislative action. A fundamental rule of construction is to preserve constitutionality of legislation unless we are restrained by clear, unequivocal and express constitutional prohibition (*Ferguson* v. *Skrupa,* 372 U. S. 726, 730; *Wasmuth* v. *Allen,* 14 N Y 2d 391, 397–398). Defendant has failed to carry his burden of demonstrating that the sentencing provisions of the statute are not a permissible exercise of legislative authority and are, therefore, constitutional.

The conviction should be affirmed, the sentence should be modified by suspending the indeterminate sentence with a maximum of four years and by placing defendant on probation for five years (Penal Law, § 65.00). Defendant should be released from Attica Correctional Facility and committed to the Sheriff of Monroe County for delivery to the care and custody of the Drug Abuse Control Commission for residential treatment for a period not in excess of one year unless extended by a court (Penal Law, § 65.10, subd. 4, par. [a], cl. [ii]).

MARSH, P. J., CARDAMONE, SIMONS and DEL VECCHIO, JJ., concur.

Judgment insofar as it imposes sentence unanimously modified, as a matter of discretion in the interest of justice, by changing the sentence to a five-year period of probation and by certification of defendant to the care and custody of the Drug Abuse Control Commission of the State of New York. Defendant is remanded to Supreme Court of Monroe County, KENNEDY, J., for the fixing of conditions of probation, as specified in subdivision 3 of section 65.10 of the Penal Law and any other conditions reasonably related to his rehabilitation, whereupon defendant is to be committed to the Sheriff of Monroe County for delivery to the Drug Abuse Control Commission.