Clarence H. Brisco, J.
The petitioner, City of Corning, in proceeding No. 1, has petitioned this court for an order to declare null and void and of no effect the provisions of chapter 725 of the Laws of 1974 and also for an order staying all proceedings begun by petition on behalf of Corning Police Department of Corning City Unit of Steuben County Chapter, Civil Service Employees Association, Erwin Kelly, William A. Spenla, and State of New York Public Employment Relations Board.
The City of Corning in proceeding No. 2, has petitioned this court for an order to stay arbitration begun by petition on behalf of respondent International Association of Firefighters, Local 932, against said City of Corning and also why the provisions of Chapter 724 of the Laws of 1974 should not be declared null and void and of no effect.
The said proceedings have been heard at a Special Term of this court on the 18th day of November, 1974 and have been consolidated and argued at said time and place.
The City of Corning, the petitioner in proceeding No. 1 and in proceeding No. 2, has set forth and argues in substance its reasons for a review of the New York Public Employment Relations Board in relation to compulsory binding arbitration *296 on contract disputes between the city and the firemen and the city and the policemen.
The city maintains that under the Taylor Law (Civil Service Law, § 209) as it existed prior to recent enactment of the Legislature (L. 1974, ch. 725, eff. July 1, 1974), contract disputes in the end were determined by the legislative body of the municipality. The city maintains that the amendment of July 1, 1974 eliminated the determination by the legislative body of the municipality and placed it in the hands of a compulsory binding arbitration board composed of one person chosen by the municipality, one chosen by the firemen or policemen and then, from a list furnished by Public Employment Relations Board, the so-called public member is chosen by the other two in this fashion: a coin is flipped to see who would make a choice whether to choose first or second and on that basis the final man is chosen from the list of seven by striking off names that are unacceptable until there only remains one, who must be taken by both parties. The city further claims it is obvious that the arbitrator picked by the city would be in favor of the city’s position and the arbitrator picked by the firemen or policemen would be in favor of the policemen or firemen thereby leaving the whole decision to one person mandatorily chosen by the parties because of an action of the Legislature.
The position of the city on these applications is as follows:
(a) The negotiations between the city and the police and firemen were commenced in time sufficient to have the total matter determined under the rules of the Taylor Law prior to July 1, 1974, and, therefore, it is not bound by the new act of the Legislature. The city claims that the reason that the matter was not completed prior to July 1, 1974, was due to the delaying tactics of both the police and firemen and employees of the Public Employment Relations Board, as set forth in the petition.
(b) The city further claims the new enactment which went into effect July 1, 1974, should be declared null and void since it deprives the community of control of its own affairs through its duly appointed or elected officials, and places such control in the hands of an arbitrator, he being given the authority to legislate what should be done in certain circumstances, which authority had been previously placed in the hands of the elected officials pursuant to the charter of the City of Corning, a special act of the Legislature, chapter 142 of the Laws of *297 1905. This special act of the Legislature cannot be superceded by the general act of the legislature, the enactment of July 1, 1974. In support of its position the city cites McKinney’s Consolidated Laws of New York (Book 1, Statutes, § 396); People ex rel. Savory v Plunkett (295 NY 180); and People ex rel. Leet v Keller (157 NY 90).
(c) The city further maintains that the general act of the Legislature violates the constitutional rights of every individual in the city, and deprives the public officials of their constitutional authority. Since negotiation deals with money in every aspect, whether it be money for holidays, or money for sick leave, or money for salaries, or money for pensions, they deal with money. To grant authority to an arbitrator to make a decision binding on the people of the community places in the hands of that arbitrator the authority to deprive people of the community of their rights and property, without due process of law, since his determination can financially bankrupt a community, and financially bankrupt property taxpayers, without recourse to any court, if he were so inclined. Never before in the history of government have people been placed in a position of being at the mercy of an individual whom they did not choose or elect to public office, and is tantamount to taxation without representation.
(d) Also, the city maintains that it is peculiar that only in case of police and firemen is this law effective. It applies to no other area of public employment. It does not apply to school districts, Sheriff’s Departments, State Police, or New York City, or State Government, and therefore, is unequal as affecting only a segment of the population.
The city also requests that a stay be ordered pending determination of this court upon both of said petitions.
The respective respondents deny that any willful or intentional delay has been had and that they have proceeded with due diligence at all times. They deny that the sections of the Civil Service Law are unconstitutional and have asked that the petitions of the City of Corning be denied and that there be no stay of each of the proceedings herein.
From the time of the enactment of the Taylor Law (L. 1967, ch. 392), section 209 of the Civil Service Law has provided a procedure for the resolution of disputes arising in the course of collective negotiations. These procedures included mediation and factfinding under the supervision of the Public Employment Relations Board (PERB). In 1969 a further proce *298 dure was added, as the "final step” in the resolution of disputes, consisting of a hearing before the legislative body of the governmental unit involved, at which the recommendations of the factfinder are presented and arguments made by the contending parties, followed by a legislative determination of the dispute "in the public interest, including the interest of the public employees involved” (Civil Service Law, § 209, subd 3, par [e]; as amd by L 1969, ch 24).
Recognizing, however, the greater threat posed to public safety by work stoppages among police and firemen, the Legislature has now enacted a new "final step” for organized police and fire departments. It has provided for compulsory arbitration before a public arbitration panel, established under the jurisdiction of PERB and following explicit standards and guidelines, whose determination shall be "final and binding” upon the parties (Civil Service Law, § 209, subd 4, par [c], cl [vi]).
This court views the petitions of the City of Corning as essentially claims that the city’s "home rule” powers have been impaired. Therefore, this court sets forth its understanding of article IX of the State Constitution as it relates to home rule.
Section 1 of the article is entitled "Bill of rights for local governments” and grants specific "rights, powers, privileges and immunities” in addition to those granted elsewhere. None of the eight specific areas of authority can be related to in this proceeding.
Article IX (§ 2, par [b]) requires the State Legislature to "provide for the creation and organization of local governments in such manner as shall secure to them the rights, powers, privileges and immunities granted * * * by this constitution.” In clause (1) of paragraph (b) it directs the Legislature to enact a statute of local governments, granting powers "including but not limited to” those expressly vested by this article; those powers, once enacted, may be repealed or diminished only by action of the Legislature in two successive years. In addition, it limits the power of the Legislature to act "in relation to the property, affairs or government of any local government” only by general law, or by special law only at the request of the government involved or upon a message of necessity from the Governor (§ 2, par [b], cl [2]). It further permits the Legislature to confer upon local governments *299 additional powers "not relating to their property, affairs or government” (§ 2, par [a], cl [3]).
Paragraph (c) of section 2 clearly expresses the limits imposed on local governments in adopting local laws relating to matters not expressly covered in the statute of local government or other statutory provision, in pertinent part as follows:
"(c) In addition to powers granted in the statute of local governments or in any other law, (i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government and, (ii) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:
"(1) The powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees, except that cities and towns shall not have such power with respect to members of the legislative body of the county in their capacities as county officers.”
Thus, on the face of it, the authority granted to a local government to adopt and amend local laws relating to the terms and conditions of employment of its employees may not be exercised in a manner inconsistent with "any general law”.
The provisions of the statute of local governments and the Municipal Home Rule Law, in the extension of powers to local governments and reservation of powers in the Legislature, generally parallel the provisions of the home rule article of the Constitution.
The provisions of chapters 724 and 725 of the Laws of 1974 constitute a general law because they relate to all municipal public employers having Police and Fire Departments (excepting only the City of New York which has its own arbitration measures). They constitute an addition to an existing general law (Civil Service Law, art 14, commonly known as the Taylor Law) which relates to a subject matter of State concern — the settlement of terms and conditions of employment of public *300 employees by agreement with public employers, and the avoidance of work stoppages (Civil Service Law, § 200).
The Legislature may act by general law in areas of general State concern, even though the enactment may touch upon the property, affairs or government of municipalities and circumscribe local authority in that area. In fact, the very term "property, affairs or government” is a term of art, with a limited meaning determined by the courts. As Judge Crane said in Adler v Deegan (251 NY 467, 473): "When the people put these words in article XII [now article IX] of the Constitution, they put them there with a Court of Appeals’ definition, not that of Webster’s dictionary.”
Accordingly, in Adler, the Multiple Dwelling Law was held not violative of the home rule law, even though it affected only the City of New York, on the reasoning that rapid mass transit was a matter of general State concern. There are numerous other examples, following Adler v Deegan, in which State laws, some of which in practical effect related to a single city, were upheld as carrying out a general State concern. (See, e.g., Whalan v Wagner, 2 Misc 2d 89, affd 3 AD2d 936, affd 4 NY2d 575; Kelly-Sullivan v Moss, 174 Misc 1098; City of New York v State of New York, 67 Misc 2d 513.) By the same token, local governments have no authority to enact local legislation inconsistent with a general State law (Wholesale Laundry Bd. of Trade v City of New York, 17 AD2d 327, affd 12 NY2d 998; City of Utica v Mercon, 71 Misc 2d 680).
If there is in fact any express provision in the City Charter of the City of Corning which prohibits city officials from taking part in compulsory arbitration, then it is inconsistent with a general State Law, and must yield.
It has always been within the power of the Legislature to provide by general law (i.e., "mandate”) expenditures for local governments, including, in the past, minimum salaries and maximum hours for specific categories of employees (see, e.g., Social Welfare Law, former §§ 79, 79-a; Labor Law, former §§ 168-a, 168-b, 168-c; see, also, L 1911, ch 360, as amd by L 1970, ch 788; L 1968, ch 1011, § 2, as amd by L 1969, ch 959, § 3; 1923, ch 410, § 1, as amd by L 1941, ch 626, § 1; L 1923, ch 410, § 2, as amd by L 1957, ch 413; L 1968, ch 1011, § 3, as amd by L 1969, ch 959, § 3; L 1968, ch 1011, § 3, as amd by L 1970, ch 952). In the present context, the Legislature has elected to mandate the settlement of terms and conditions of employment in the public safety services in a manner which *301 must be acceptable to all parties. It has done this through subdivision 4 of section 209 of the Civil Service Law, compulsory and binding arbitration.
The Legislature can mandate the terms and conditions of employment of municipal employees directly by general law without violating "home rule”. It can also mandate it through the medium of compulsory and binding arbitration. The Legislature can, in the interest of public health and welfare, require the settlement of disputes in nonprofit hospitals through the medium of compulsory and binding arbitration. (Mount St. Mary’s Hosp. of Niagara Falls v Catherwood, 26 NY2d 493; Long Is. Coll. Hosp. v Catherwood, 54 Misc 2d 712, affd 28 AD2d 1092, revd on other grounds, 23 NY2d 20.) It can require the same in municipal police and fire services.
Several other States now provide by law for compulsory arbitration in public employment generally or in public safety services particularly. (Cf. City of Biddeford v Biddeford Teachers Assn., 304 A2d 387 [Me]; City of Warwick v Warwick Regular Firemen’s Assn., 106 R.I. 109; Fire Fighters Local No. 946 v City of Laramie, 437 P2d 295 [Wyo]; Dearborn Fire Fighters Union Local No. 412 v City of Dearborn, 42 Mich App 51.)
The provisions of chapters 724 and 725 of the Laws of 1974, must be applied to the resolution of impasses which have not been resolved by agreement or legislative action, effective on July 1,1974.
It has been said in cases too numerous to require citation that newly enacted statutes shall not be given retroactive effect, but shall be construed as prospective only, unless the language of the statute, either expressly or by necessary implication, requires a retroactive construction (see, e.g., McKinney’s Cons. Laws of NY, Book 1, Statutes, § 51, supra; Shielcrawt v Moffett, 294 NY 180). The same principle is applicable to amendments to existing statutes (McKinney’s, Statutes, supra, § 52) and a cause of action or remedy created by a new statute or extended by statutory amendment, where no such cause of action or remedy previously existed, should not be applied to permit the adjudication of wrongs which occurred prior to the enactment or amendment (cf. Jacobus v Colgate, 217 NY 235).
There are, however, two well-established exceptions in the foregoing rule in relation to remedial statutes (McKinney’s, Statutes, supra, § 54) and procedural matters (McKinney’s, *302 Statutes, supra, § 55). Whether either of the latter need be called an exception to the general rule is a matter of semantics, however; consider the following language in subdivision a of section 54 of McKinney’s, Statutes (supra): "Every statute pertaining to a remedy is retroactive in that it operates upon all pending actions unless they are expressly excepted, but this does not apply to a statute whereby a new right is established even though it be remedial. Similarly stated, in the absence of language indicating a contrary legislative intent, a remedial statute is ordinarily applied to procedural steps in pending actions, and is given a retrospective effect in so far as the statute provides a change in the form of a remedy or provides a new remedy for an existing wrong.”
To the same effect, section 55 of McKinney’s, Statutes (supra) says that procedural statutes will be applied to pending cases except where their effect is to create a remedy where none previously existed. Viewed from a different angle, it can be said that amendments to, procedural statutes must be given immediate and prospective application to pending cases, except where a totally new remedy is created. Judge Cardozo stated the distinction in Jacobus v Colgate (supra, p 242): "What we emphasize now is the distinction between statutes which merely change the procedure for the enforcement of a right and statutes which supply a remedy by which a right for the first time becomes enforceable.”
In the Jacobus case, it was held that a statute establishing a cause of action in New York against persons not residents of the State could not sustain jurisdiction in a case where the injury complained of occurred long before the enactment of the statute.
A further refinement of the principle appears in Strang v State of New York (206 Misc 734). There, it appears, the Legislature amended the Public Authorities Law to authorize claims against the Thruway Authority to be heard and determined in the Court of Claims. Previously, jurisdiction over the Thruway Authority lay in the Supreme Court. Before the amendment took effect, plaintiffs filed claims against the State and the Thruway Authority in the Court of Claims. Upon a motion on behalf of the authority, the claims against it were dismissed as lacking in statutory authority. The court (p 736) agreed that no new right of action against the authority had been created and that the change was a procedural one "and thus appears to fall within the exception to the general rule *303 that statutes will not be retroactively construed * * * However, this precept has been generally understood to refer only to those pending actions in which the procedural step changed by the new law has not yet been taken. (People ex rel. Central New England Ry. Co. v State Tax Comm., 261 App Div 416, 418.)”
The application of the foregoing principle to the instant situation is readily apparent. Under the Taylor Law, from the outset, the City of Corning was required to negotiate with employee organizations representing its employees and to enter into written agreements with them (Civil Service Law, § 204, subd. 2). If negotiations fail to produce an agreement voluntarily, the parties are obliged to pursue the impasse procedures set forth in section 209 of the Civil Service Law, if either party requests it or PERB orders it. These are the established rights and remedies which the amendments at issue here (L. 1974, chs. 724, 725) relate to. The new requirement of compulsory and binding arbitration does not provide a new remedy for employee organizations — it merely provides a new, more effective means of enforcing established rights and remedies. Nor, by the same token, does it deprive the employer retroactively of a substantial right. Since the employer had not yet undertaken the former "final step”, and had not exercised any of its prerogatives in that respect, its present complaint is not legally justified. (Strang v State of New York, supra).
Recent cases relating to the application of new decisional law to pending and concluded litigation are not to the contrary. The Court of Appeals has applied its landmark decision in Dole v Dow Chem. Co. (30 NY2d 143) to pending cases, notwithstanding the date when the cause of action arose (Kelly v Long Island Light. Co., 31 NY2d 25) but has declined to apply it to defendants in other cases, decided subsequently, where parts of the litigation had been concluded before the Dole decision, and to apply it to the remaining defendants would be patently unfair. (Slater v American Min. Spirits Co., 33 NY2d 443).
In Lincoln Bldg. Assoc. v Barr (1 NY2d 413, 415, 416) this court finds many situations wherein the Court of Appeals and other courts have upheld the constitutionality of legislative actions. A reference is hereby made as follows (pp 415-416): "The law is clear. The principles by which to test the constitutionality of a statute resting on the police power have been *304 asserted over and over again: A legislative enactment carries with it a strong presumption of constitutionality, i.e., it is presumed to be supported by facts known to the Legislature (United States v Carolene Products Co., 304 US 144, 152; South Carolina Highway Dept. v Barnwell Bros., 303 US 177, 191; Carmichael v Southern Coal Co., 301 US 495, 509-510; Defiance Milk Products Co. v Du Mond, 309 NY 537, 540-541; East New York Sav. Bank v Hahn, 293 NY 622, 626-628, affd 326 US 230). This presumption, however, is not irrebuttable (Defiance Milk Products Co. v Du Mond, supra, p 541), and courts may scrutinize the basis of legislative enactments predicated upon the existence of a particular state of facts (United States v Carolene Products Co., supra, p 153; Chastleton Corp. v Sinclair, 264 US 543); but they may not be concerned with questions as to the 'reasonableness, wisdom and propriety’ (South Carolina Highway Dept. v Barnwell Bros., supra, p 191; Day-Brite Lighting v Missouri, 342 US 421, 423; Defiance Milk Products Co. v Du Mond, supra, p 541; Thompson v Wallin, 301 NY 476, 488, app dsmd 342 US 801; Matter of Stubbe v Adamson, 220 NY 459, 469; People v Griswold, 213 NY 92, 97), expediency (Thompson v Wallin, supra; Carmichael v Southern Coal Co., supra, p 515) or 'desirability’ thereof (Daniel v Family Ins. Co., 336 US 220, 224), and 'Where the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the legislature’ (Old Dearborn Co. v Seagram Corp., 299 US 183, 196; Matter of Stubbe v Adamson, supra). Nor may courts substitute their judgment for that of the Legislature so long as there can be discovered 'any state of facts either known or which could reasonably be assumed’ to afford support for the legislative decision to act (United States v Carolene Products Co., supra, p 154; East New York Sav. Bank v Hahn, 326 US 230, 234, supra; South Carolina Highway Dept. v Barnwell Bros., supra, p 191; Borden’s Co. v Ten Eyck, 297 US 251, 263). Applying these tests to the case at bar, we are of the opinion that the so-called office rent control law is clearly constitutional, and may not be invalidated by these proceedings.”
In a landmark decision decided December 5, 1974 by the Appellate Division of the Supreme Court of the State of New York, Fourth Department, in People v Young (46 AD2d 202), the court has given its thought relating to the constitutionality of a statute. The court said (p 208): "It is axiomatic that a strong presumption of constitutionality attaches to all legislative action. A fundamental rule of construction is to preserve *305 constitutionality of legislation unless we are restrained by clear, unequivocal and express constitutional prohibition (Ferguson v Skrupa, 372 US 726, 730; Wasmuth v Allen, 14 NY2d 391, 397-398).”
The City of Corning in each of the above-entitled proceedings has failed to carry its burden of demonstrating that the enactment of chapters 724 and 725 of the Laws of 1974 are unconstitutional.
This court holds that the provisions of section 209 of the Civil Service Law as it existed prior to July 1, 1974 and as amended by chapters 724 and 725 of the Laws of 1974 are constitutional. The petition in each of the above-entitled proceedings is dismissed without costs and the petitioners are ordered to proceed to binding arbitration pursuant to law. Submit order in keeping with this decision.