OPINION OF THE COURT
Robert M. Stolz, J.
Defendant, John Moore, is charged with criminal sale of marihuana in the fourth degree (Penal Law § 221.40) and unlawful possession of marihuana (Penal Law § 221.05). He now moves to dismiss the information in the interest of justice pursuant to CPL 170.40.[1]
According to the affidavits of defendant and his counsel, defendant is the founder of one of several "Medical Marijuana Buyer’s Clubs” that exist throughout the country. These clubs, in admitted contravention of law, distribute marihuana to those for whom it is medically "necessary”. Defendant is not a physician.
The particular charges in this case arise out of defendant’s sale of a quantity of marihuana to an AIDS sufferer. The sale took place in Manhattan’s Washington Square Park at approximately 5 o’clock on the afternoon of August 21, 1995.
According to the defendant, the marihuana was distributed at "cost” as part of a humanitarian effort by him to relieve the suffering of persons with AIDS and other diseases. Substantial expert opinion and some anecdotal evidence submitted by the defendant appears to lend support to the proposition that marihuana in fact may have such beneficial effects, particularly in suppressing nausea and inducing appetite, thereby allowing persons suffering from "AIDS wasting syndrome” or undergoing chemotherapy to nourish themselves.
The defendant himself suffers from chronic candidiasis and chronic fatigue immune dysfunction syndrome, which cause him to suffer a number of ailments, including chronic pain throughout his joints and muscles, nausea, and loss of appetite. Defendant also has difficulty sleeping and suffers from *996 "generalized disorientation”. According to defendant’s motion papers, his attempts to alleviate these conditions through conventional means were of no avail. Having heard about the potentially ameliorative effects of marihuana, defendant began using marihuana himself for medicinal purposes. Defendant believes that his marihuana use and the concomitant improved sleeping patterns caused several of his medical conditions to subside.
Based upon this experience, he began distributing free marihuana to persons he felt were in need of the drug for medicinal purposes. As more people sought "medical marihuana” from the defendant, he started a "Medical Marijuana Buyer’s Club” to distribute marihuana, at wholesale cost, to its "clients”. Defendant claims that the "club” requires documentation from those seeking marihuana as to their need for the drug.
On the day of his arrest, defendant was observed by the arresting officer selling a bag of marihuana to one of defendant’s "clients”. Defendant was also found to be in possession of eight bags of marihuana at that time.
A. MOTION TO DISMISS IN THE INTEREST OF JUSTICE
CPL 170.40 (1) provides that a court may dismiss an accusatory instrument if it finds the "existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice”. A compelling factor is present if the denial of the motion would be such an abuse of discretion as to shock the conscience of the court. (People v Stern, 83 Misc 2d 935 [Crim Ct, NY County 1975].) The defendant bears the initial burden of setting forth compelling factors in his motion papers. If this burden is not met, the court may summarily deny the motion. (See, e.g., People v Schlessel, 104 AD2d 501 [2d Dept 1984].) A "trial court’s discretion to dismiss in the interest of justice is an undertaking to be sparingly exercised.” (People v Litman, 99 AD2d 573, 574 [3d Dept 1984].)
In support of his motion to dismiss, defendant argues that dismissal is warranted because his distribution of marihuana was part of a "mission of mercy” to help others suffering from medical conditions similar to his. Defendant also cites his absence of a criminal record and the fact that he did not sell the marihuana for profit. In determining this motion, the court is assuming, without deciding, that the facts set forth in *997 defendant’s moving papers are true.[2] Accordingly, no hearing is necessary, and defendant’s request for a hearing is denied. (People v Morrisey, 161 Misc 2d 295 [Crim Ct, NY County 1994]; People v Schlessel, 104 AD2d 501 [2d Dept 1984], supra; People v Shrinski, 84 Misc 2d 798 [Greene County Ct 1975]; cf., People v Muriel, 187 AD2d 341 [1st Dept 1992].)
In determining whether to dismiss in furtherance of justice, the court is required to consider the following factors enumerated in CPL 170.40:
"(a) the seriousness and circumstances of the offense;
"Ob) the extent of harm caused by the offense;
"(c) the evidence of guilt, whether admissible or inadmissible at trial;
"(d) the history, character and condition of the defendant; "(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;
"(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;
"(g) the impact of a dismissal on the safety or welfare of the community;
"(h) the impact of a dismissal upon the confidence of the public in the criminal justice system;
"(i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;
"(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.”
The court must examine and consider these factors "individually and collectively” in order to determine whether such a "compelling factor, consideration, or circumstance exists” (CPL 170.40 [1]) to warrant dismissal in furtherance of justice.
(a) The Seriousness and Circumstances of the Offense
Defendant is charged with criminal sale of marihuana in the fourth degree. By denominating this offense a class A misdemeanor, punishable by up to one year of incarceration, the Legislature clearly has expressed its view that it is a serious *998 offense. To the extent that CPL 170.40 (1) (a) requires the court to undertake its own evaluation of the "seriousness” of the offense, the court also finds the intentional sale of marihuana to be a "serious” matter.[3]
The "circumstances” of this offense, however, require further analysis. Defendant portrays his actions as the principled, humanitarian activity of one who is engaged in a mission of mercy, distributing needed marihuana only to those whose suffering will be relieved by its consumption. He characterizes his personal use and distribution as a "medical necessity”. He notes that his "club” requires documentation of purchasers’ medical need for the substance, which is provided at "cost”.
While conceding that "drug distribution is a serious offense” defendant argues that the "distribution of life-saving medication to dying people is not”. While this is undoubtedly true, it begs the question as to the seriousness of the actions of one who distributes a purportedly "life-saving medication”, which is also an illegal drug.
In resolving this question, it seems particularly relevant that, insofar as the record discloses, defendant is entirely without medical or pharmacological credentials. Much of the medical literature that he has submitted in support of the therapeutic value of marihuana emphasizes that it must be administered under appropriate medical supervision. In this case, far from administering marihuana in a controlled, medically supervised environment, defendant admittedly sold it in a public park; and, while he claims to have satisfied himself that the recipient of the drug in fact required it, defendant does not appear to this court to be an appropriate person to make such determinations.
Indeed, while the court has assumed that the defendant’s actions are well motivated, the court cannot condone the distribution of an illegal drug, whose unsupervised consumption might be injurious to those persons whom defendant seeks to help. The distribution of unprescribed legal drugs by unlicensed individuals is a crime (see, Education Law § 6810 et seq.); and, although not before this court, the illegal distribution to the public of legal drugs, with the attendant risks to public safety, *999 would be a serious matter not likely to warrant dismissal under CPL 170.40 (1). A fortiori, where the defendant has undertaken the unprescribed, unlicensed and unsupervised distribution of an illegal drug, the court is reluctant to find a compelling circumstance warranting dismissal.
Finally, in this regard, defendant’s argument that his actions were justified by medical necessity is best left to the trial of this case. It would be premature to express a view as to whether defendant has proffered sufficient proof to warrant the submission of that very narrow defense for consideration by a jury. (See, United States v Dorrell, 758 F2d 427, 432 [9th Cir 1985]; People v Bordowitz, 155 Misc 2d 128, 131 [Crim Ct, NY County 1991]; People v Alderson, 144 Misc 2d 133, 143 [Crim Ct, NY County 1989].)
(b) The Extent of Harm Caused by the Offense
The court disagrees with defendant’s blithe assertion that "no harm was caused by the offense”. The defendant sold an illegal drug in a public park on a summer afternoon. While defendant may not be part of what the People term "the marihuana industry that plagues that park”, anyone observing his actions in this case (including the arresting officers) might find his activities indistinguishable from those of any other marihuana dealer. As such, they contributed to an atmosphere of illegality and casual drug consumption which are hardly conducive to the quiet enjoyment of a park by those who wish to use it for lawful pursuits.
(c) The Evidence of Guilt, Whether Admissible or Inadmissible at Trial
Defendant admits that the evidence of his "guilt” is clear, but proffers a defense of medical necessity. As noted above, a determination as to the merits of this defense must await the trial of this case.
(d) The History, Character and Condition of the Defendant
Defendant has no criminal record and appears to be seriously ill. These factors, by themselves, do not constitute compelling circumstances warranting dismissal in this case. (People v Hudson, 217 AD2d 53; People v Pender, 156 Misc 2d 325 [Sup Ct, Queens County 1992]; People v Sierra, 149 Misc 2d 588 [Sup Ct, Kings County 1990]; People v Lewis, NYLJ, June 6, 1995, at 27, col 3 [Sup Ct, Bronx County]; People v Lopez, NYLJ, Jan. 13, 1995, at 29, col 6 [Sup Ct, NY County]; cf., People v Seifert, NYLJ, Apr. 7,1995, at 34, col 4 [Sup Ct, Queens County]; People v Redondo, NYLJ, Mar. 6, 1995, at 30, col 2 [Sup Ct, Bronx *1000 County]; People v Rodriguez, NYLJ, Sept. 8, 1994, at 23, col 2 [Sup Ct, Bronx County].)
(e) Any Exceptionally Serious Misconduct of Law Enforcement Personnel in the Investigation, Arrest and Prosecution of the Defendant
No such misconduct is alleged.
(f) The Purpose and Effect of Imposing Upon the Defendant a Sentence Authorized for the Offense
At this stage of these proceedings it is difficult, if not impossible, to evaluate fairly "the purpose and effect” of any sentence that might be imposed upon this defendant. Of course, the court has not had the benefit of presentence memoranda or a presentence report. However, defendant’s contention that there would be "simply no purpose served” by imposing a sentence upon him discounts important considerations of general deterrence and the need to vindicate the principle that, as a general matter, some sanction should attach to an intentional violation of the law. (People v Beth, NYLJ, Nov. 8, 1995, at 28, col 1 [Crim Ct, NY County]; People v Alderson, 144 Misc 2d 133 [Crim Ct, NY County 1989], supra; United States v Kroncke, 459 F2d 697 [8th Cir 1972]; United States v Moylan, 417 F2d 1002 [4th Cir 1969], cert denied 397 US 910 [1970].)
(g) The Impact of a Dismissal on the Safety or Welfare of the Community
The court has considered this factor and cannot agree with defendant’s contention that the "safety or welfare of the community would not be impacted negatively by a dismissal”. As noted, this crime occurred on a summer afternoon, in a public park. Although there appears to be legitimate scientific authority in favor of making marihuana available for therapeutic consumption, the court sees little merit to the contention that a park is the appropriate place to distribute it for that purpose. To the extent that dismissal of this case would appear to sanction defendant’s actions, including his choice of locale, the court believes it would have a deleterious effect on public welfare. More particularly, by fostering the impression that defendant’s actions were somehow appropriate, such a dismissal could well encourage similar activity which would interfere with the public’s right to the quiet enjoyment of its parks.
To put it most simply, the court believes that the public has a right to use its parks free of the presence of drug trafficking, let alone judicially sanctioned drug trafficking. To diminish *1001 that public right by dismissal of this case "in furtherance of justice” necessarily would have a negative impact on the public welfare.[4]
(h) The Impact of a Dismissal Upon the Confidence of the Public in the Criminal Justice System
This is not the case of a defendant engaged in aberrant activity, for which he has expressed remorse and which he is unlikely to repeat. To the contrary, defendant is a "community activist” who admits to the systematic violation of the law through the activity of his "Medical Marijuana Buyer’s Club”. Clearly, he believes that his actions are morally correct and, insofar as the court can determine, he intends to continue with them. However, defendant’s "exercise of moral judgment based upon individual standards does not carry with it legal justification or immunity from punishment for breach of the law.” (United States v Moylan, supra, at 1008.)
Under these circumstances, the court is concerned that granting this motion would be to judicially approve (or appear to approve) an ongoing course of criminal conduct in direct contravention of the clear legislative intent in enacting the marihuana laws. A decent regard for the separation of powers militates against such a result. (See, People v Onofre, 51 NY2d 476 [1980]; People v Shepard, 50 NY2d 640 [1980]; Wells v State of New York, 130 Misc 2d 113 [Sup Ct, Steuben County 1985].) For a court to so overstep its bounds in the face of an admitted crime, which the defendant fully intends to repeat, would necessarily diminish the public’s confidence in the criminal justice system.
(i) Where the Court Deems it Appropriate, the Attitude of the Complainant or Victim With Respect to the Motion
No such information has been presented to the court.
(j) Any Other Relevant Fact Indicating that a Judgment of Conviction Would Serve No Useful Purpose
The court finds no other factors to demonstrate that a conviction would serve no useful purpose.
The court has considered the foregoing factors individually and collectively. In particular, the court has endeavored to balance the defendant’s apparently laudable goals with the needs *1002 of the public and the dictates of the law as required by CPL 170.40. In so doing, the court is mindful of the limitations of judicial discretion and conscious of the admonition that its use "to dismiss in the interest of justice is an undertaking to be sparingly exercised.” (People v Litman, 99 AD2d 573, 574 [3d Dept 1984], supra; People v Insignares, 109 AD2d 221 [1st Dept 1985]; People v Andrew, 78 AD2d 683 [2d Dept 1980].) Upon such consideration, the court does not find in this case the existence of "some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant” on these charges "would constitute or result in injustice.” (CPL 170.40 [1].)
Accordingly, defendant’s motion to dismiss the accusatory instrument in furtherance of justice is denied.
B. Constitutionality of Marijuana Laws
Defendant also argues that the marihuana laws violate the Privileges and Immunities Clause (art IV, § 2) of the United States Constitution. The court disagrees.
"Smoking marihuana receives no explicit or implicit constitutional protection.” (United States v Maas, 551 F Supp 645, 647 [D NJ 1982].) Quite clearly, selling marihuana is equally unprotected, if not more so. In 1973 the United States Court of Appeals for the Second Circuit observed that:
"Any court asked to undertake review of the multifarious political, economic and social considerations that usually underlie legislative prohibitory policy should do so with caution and restraint. In this case, the challenged legislation incorporates conclusions or assumptions concerning an array of medical, psychological and moral issues of considerable controversy in contemporary America * * * [I]n most instances the resolution of such sensitive issues is best left to the other branches of government.
"Reflecting this judgment, courts usually review challenged legislative acts with the understanding that they are presumed valid and will be so found unless it is shown that the statute in question bears no rational relationship to a legitimate legislative purpose * * * The only cases that require a stricter standard of review are those that involve an infringement of a right explicitly enunciated in the Constitution or otherwise recognized as fundamental.” (United States v Kiffer, All F2d 349, 352 [citations omitted].)
The court believes these views to be equally sound today; and, *1003 of course, the standard for reviewing legislative action remains the same. (See also, United States v Gaertner, 583 F2d 308, 312 [7th Cir 1978]; United States v Young, 46 AD2d 202, 207 [4th Dept 1974] [upholding marihuana laws then in force as presumptively constitutional exercise of police power].) There being no fundamental constitutional right to possess or sell marihuana (United States v Maas, 551 F Supp 645, 647, supra), the court declines to disturb the considered views of the Legislature in proscribing its possession or sale.
As the Court of Appeals held in reviewing a constitutional challenge to the marihuana laws in People v Shepard (50 NY2d 640, 645-646, supra): "the statute now before us represents the current and considered judgment of an elected Legislature acting on behalf of the people of this State * * * Nothing would be more inappropriate than for us to prematurely remove marihuana from the Legislature’s consideration by classifying its personal possession as a constitutionally protected right. The sphere within which we may properly declare a legislative act unconstitutional is extremely limited and clearly does not encompass this case.”
For the foregoing reasons, defendant’s motion to dismiss the accusatory instrument on constitutional grounds is also denied.

. Defendant appears to have moved mistakenly under CPL 210.40, the statutory provision governing such motions in felony cases.

. Indeed, the only aspect of defendant’s Clayton motion to which the People responded is the allegation that the recipient of the marihuana in this case was an AIDS suiferer. After the People questioned this fact, defendant submitted sufficient evidence under seal, with a copy to the People, to satisfy the court, that the recipient of the marihuana in this case was in fact suffering from AIDS.

. Defendant also is charged with possession of marihuana, a violation, which, standing alone, would be a less "serious” matter. However, given defendant’s possession of some eight bags of marihuana, it would appear that this count is tied inextricably to his distribution activities. The court therefore views this count more seriously than it might were it the only charge defendant faced.

. Moreover, to the extent that defendant’s activity, as seen by the arresting officer and presumably any member of the public in the park, appeared to be a "garden variety drug deal”, the court is concerned that dismissal would encourage nontherapeutic marihuana sales in the park. The presence of this illicit trade could well affect the public "safety”.