OPINION OF THE COURT
Bernard J. Malone, Jr., J.
The motions of the plaintiffs (hereinafter referred to collectively as the PBA) brought on by orders to show cause dated December 15 and 26, 2000, and the cross motion of the City of New York and Mayor Giuliani (hereinafter referred to collectively as the City) dated December 28, 2000, are denied as moot. There remains for determination the following: the motion of the PBA for summary judgment declaring chapter 641 of the Laws of 1998 to be constitutional and interpreting the legislation as placing jurisdiction of scope of bargaining and/or the existence of an impasse in negotiations between the PBA and the City with the New York State Public Employment Relations Board (PERB), rather than the Board of Collective Bargaining of the City of New York (BCB); the cross motion of the City for summary judgment declaring chapter 641 to be unconstitutional as in violation of the Home Rule provision of *148 the State Constitution (NY Const, art IX, § 2), or, in the alternative, that the City be permitted discovery; and the cross motion of PERB for an order dismissing the complaint because it claims that a declaratory judgment is not appropriate in view of the administrative claims pending before PERB, that the PBA has failed to exhaust its administrative remedy; and that this Court should defer to PERB and to BCB, in the first instance, to examine and determine the scope of their respective jurisdictions under chapter 641.
The events leading up to these proceedings arose from the expiration of the most recent collective bargaining agreement between the City and the PBA which covered the period of April 1, 1995 through July 31, 2000, the terms of which will remain in effect until a new agreement is signed (New York City Collective Bargaining Law [Administrative Code of City of NY] § 12-306 [a] [5]). Negotiations on a new contract commenced with the PBA presenting proposals to the City on May 4, 2000. Thereafter, six bargaining sessions were held, and at the conclusion of the October 19, 2000 session, two additional meetings were scheduled. On October 2, 2000, the City notified the PBA that it had determined that the “Bill of Rights” provision of the expired contract was a nonmandatory subject of bargaining and would not be included in any successor agreement. On October 31, 2000, the City notified the PBA that six additional provisions of the expired agreement were nonmandatory subjects of bargaining.
On November 3, 2000, the City commenced a scope of bargaining proceeding before BCB to declare a number of PBA proposals and certain provisions of the expired contract to be nonmandatory subjects of bargaining. On December 15, 2000, the PBA filed an administrative challenge before BCB contending that BCB lacked jurisdiction of the disputes between the City and the PBA. On that same date, the PBA brought two proceedings before PERB, the first for a declaratory ruling upon the applicability of the Taylor Law, and the second for a declaration of impasse.
The PBA commenced this declaratory judgment action in Albany County on December 15, 2000, shortly before a similar action was commenced in New York County by the City. This action was, at oral argument on these motions, characterized as PBA 2 following the prior litigation of the parties concerning the attempts of the New York State Legislature (hereinafter referred to as the Legislature) to transfer jurisdiction of certain labor issues between the PBA and the City from BCB *149 to PERB (City of New York v Patrolmen's Benevolent Assn., 169 Misc 2d 566, affd 231 AD2d 422, affd 89 NY2d 380 [hereinafter PBA 1]). In PBA 1, Justice Diamond set forth the statutory framework leading up to that case (at 568-569) as follows:
“Statutory Framework
“In 1967, the Legislature enacted the so-called ‘Taylor Law’, Civil Service Law §§ 200-214, in an attempt to provide an effective tool to avoid the recurrence of crippling labor strikes by public sector employees similar to those which occurred during the late 1960s. The Taylor Law provides a comprehensive framework for regulating collective bargaining between public employers, and the certified and recognized representatives of their employees so as: ‘to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government’ (Civil Service Law § 200). The Taylor Law created PERB to assist in resolving disputes between public employers and their employees (Civil Service Law § 205). PERB’s jurisdiction over such disputes, however, is not exclusive. The Taylor Law also permits localities to create neutral local governmental bodies (commonly known as mini-PERBs) to govern public employment relations between a locality and its unionized employees (Civil Service Law § 212 [1]). If a locality chooses to create a mini-PERB, Civil Service Law § 212 (1) specifically exempts the local mini-PERB from PERB’s jurisdiction and its impasse procedures under Civil Service Law § 209. A locality, however, must submit to PERB its local provisions creating its miniPERB for PERB’s prior ‘substantial equivalency5 determination before such local provisions become effective (Civil Service Law § 212 [1]). However, Civil Service Law § 212 (2) exempts the City from obtaining prior PERB approval of its mini-PERB provisions, which under this subdivision are presumptively deemed to be within PERB’s ‘substantial equivalency’ requirement absent a judicial declaration to the contrary.
“The City has opted to create its own mini-PERB, the New York City Office of Collective Bargaining (the OCB) (NY City Charter §§ 1170-1177; Administrative Code of City of NY §§ 12-301 — 12-316; 61 RCNY 1-01 — 1-15). The BCB is a constituent part of the OCB (NY City Charter § 1171). The OCB and the BCB have jurisdiction over the labor relations of all mayoral agencies, which include the New York City Police Department (Administrative Code § 12-304). Nassau, Suffolk, *150 and Westchester Counties, the Town of Hempstead and the Syracuse City School District have also opted to create their own mini-PERBs.”
During 1995, the existing collective bargaining agreement between the PBA and the City expired and on January 23, 1996 the City filed a request with BCB for the appointment of an impasse panel. On February 12, 1996, over Governor Pataki’s veto, the Legislature passed chapter 13 of the Laws of 1996 which had the effect of transferring impasse jurisdiction of collective bargaining disputes between the City and the PBA from BCB to PERB. The PBA immediately requested that PERB declare that the collective bargaining with the City was at impasse and that BCB transfer the City’s Impasse Panel Request to PERB. The City commenced the PBA 1 declaratory judgment action against the PBA, in which proceeding both PERB and BCB were necessary parties. In a well-reasoned opinion, Justice Diamond rejected PERB’s contention that declaratory judgment relief was premature, and ruled that chapter 13 violated the Home Rule provision of the New York State Constitution because it was a special law, enacted without the benefit of a Home Rule Message and which did not involve a subject that was to a substantial degree a matter of State concern. Both the Appellate Division and the Court of Appeals affirmed.
In apparent response, the Legislature enacted chapter 641 of the Laws of 1998, which was not vetoed by the Governor, which varied from chapter 13 of the Laws of 1996 as follows: the stated purpose of chapter 13 was solely to change jurisdiction from BCB to PERB of impasse procedures in the course of collective negotiations between the City and New York City Police, while chapter 641 has a stated purpose of extending PERB’s impasse jurisdiction to include the entire State, and removing the restriction upon that jurisdiction within the City with respect to collective negotiations with the New York City police; chapter 641 contains legislative findings and a declaration that it is a vital State interest to enhance protection against strikes and disruption of vital public services throughout the State, which the local option provided in Civil Service Law § 212 had not adequately done. Chapter 641 extended PERB’s impasse jurisdiction to all organized fire and police departments within the State, with a grandfather clause, at the option of the collective bargaining agent, permitting those mini-PERBs in existence on the day before the effective date of the chapter to retain impasse jurisdiction. The changes to the *151 language of Civil Service Law § 209 are the same in both chapters 13 and 641.
The constitutional issue before the Court is whether changes made by the Legislature in enacting chapter 641 overcome the Home Rule defects found in PBA 1 by the courts. Section 2 (b) (2) of article IX of the State Constitution provides that the Legislature “[s]hall have the power to act in relation to the property, affairs or government of any local government only by general law, or by special law” enacted in compliance with Home Rule requirements. Section 3 (d) (1) of article IX defines a general law as a “law which in terms and in effect applies alike to all counties * * * all cities, all towns or all villages.” The same section of article IX defines a special law as a “law which in terms and in effect applies to one or more, but not all, counties * * * cities, towns or villages” (NY Const, art IX, § 3 [d] [4]). The initial question in the constitutional analysis is whether chapter 641 is a general or special law, since the “Legislature may act by general law in areas of general State concern, even though the enactment may touch upon the property, affairs or government of municipalities and circumscribe local authority in that area,” and providing PERB impasse procedures to firemen and policemen in order to avoid work stoppages is an area of “general State concern” (City of Corning v Corning Police Dept., 81 Misc 2d 294, 300, affd 49 AD2d 689).
The prevailing test is whether the legislation under review is general or local in its terms, as well as in its effect (Matter of Mayor, Aldermen & Commonalty of City of N. Y. [Elm Street], 246 NY 72). If the legislation, although affecting the property and affairs of local governments, applies alike to all local governments in terms and in effect it will be determined to be a general law not violative of Home Rule (Holland v Bankson, 290 NY 267, 270). In PBA 1, the Court of Appeals found that chapter 13 was not a general law because by “virtue of chapter 13, only New York City, among all units of local government throughout the State, is prohibited from providing for a local public employment relations board with jurisdiction over binding arbitration procedures when an impasse is reached in negotiations with its police force” (City of New York v Patrolmen’s Benevolent Assn., supra, at 388-389). This Court must determine if chapter 641 is similarly defective.
The stated purpose of chapter 641 is to make PERB’s collective bargaining dispute procedures available to all police and firemen’s unions across the State, despite the wishes of local *152 governments, because the mini-PERB option had not been sufficient in fulfilling the purposes of the Public Employees’ Fair Employment Act, at least with respect to public safety employees. The wisdom of that determination is not for court review here (although there appears to be historical support in that the number of mini-PERBS declined from a high of 35 shortly after the passage of the Taylor Law in 1967 to the present five and most of those still in existence deal with purported labor tensions allegedly due to the claimed disparities in pay between the City and adjoining municipalities), only the question of whether chapter 641 violates Home Rule. In the view of this Court, it does not do so.
Chapter 641 prohibits all local governments from compelling a police or firemen’s union to conduct impasse resolution before a mini-PERB, rather than PERB. The complaint that the results may not be uniform because chapter 641 allows those collective bargaining agents that had access to a mini-PERB on the day before the chapter took effect to elect to continue that practice does not constitute a Home Rule violation. That is so because in order to be a general law under the definition set forth in section 3 of article IX, the statute under scrutiny must treat all local governments alike, which, in this Court’s opinion, chapter 641 does. There is no requirement in the definition that all private labor unions be treated alike, although that differing treatment may be the basis for a legal challenge other than upon a Home Rule challenge. Both by its terms and its effect chapter 641 treats all local governments alike in meeting the Legislature’s purpose of prohibiting local governments from denying access to PERB’s impasse resolution procedures to police and firemen’s unions.
Another task for the Court is to construe the questioned legislation to determine whether PERB or BCB has jurisdiction of scope of bargaining issues. All of the parties agree that if chapter 641 is a valid law, and it has been ruled valid herein, under Civil Service Law § 209 PERB has jurisdiction of impasses in negotiations issues, and that BCB retains jurisdiction of improper practice disputes under Civil Service Law § 205 (5) (d) and § 209-a. The disagreement is over which entity, PERB or BCB, now has scope of bargaining jurisdiction, including when the scope of bargaining dispute is pursued through the vehicle of an improper practice charge. The PBA and PERB’s counsel take the position that jurisdiction of scope of bargaining is with PERB, while the City and BCB argue that jurisdiction of scope of bargaining remains with BCB.
*153 The new subdivision (3) of Civil Service Law § 212 added by chapter 641 provides in pertinent part that, “[notwithstanding any other provision of law to the contrary, the resolution of disputes in the course of collective negotiations as provided by section [209] of this article shall apply to any organized fire department, police force, or police department.” Civil Service Law § 209 (4) provides, in pertinent part, “in the event the board determines that an impasse exists in collective negotiations between such employee organization and a public employer as to the conditions of employment” (emphasis added). In order to determine if an impasse exists with respect to the conditions of employment PERB must, of necessity, have the power to determine what the conditions of employment are in order to meet its statutory mandate. For the purpose of implementing the policy underlying the Taylor Law, as amended by chapter 641, the phrase “conditions of employment” must be deemed the equivalent of the phrase “scope of bargaining.” Therefore, this Court construes the effect of the enactment of chapter 641 to be that PERB has jurisdiction of scope of bargaining and impasse resolution issues arising out of collective negotiations between the City and the PBA, with BCB retaining jurisdiction of improper practice complaints not related to scope of bargaining or impasse resolution.
“It is a maxim of statutory construction that the intent of the Legislature is the primary consideration” (Matter of Brusco v Braun, 199 AD2d 27, 32, affd 84 NY2d 674). Furthermore, a construction that would produce an “absurdity” is to be rejected (Zappone v Home Ins. Co., 55 NY2d 131, 137). One of the stated purposes leading to the enactment of the Taylor Law was “to promote harmonious and cooperative relationships between government and its employees” (Civil Service Law § 200). To that end, the procedures employed in resolving disputes in the course of collective bargaining should be as expeditious, cohesive and as complementary as possible. Cumbersome and time-consuming processes that would have two separate agencies on two different levels of government attempting to separately resolve the intertwined issues of scope of bargaining and impasse resolution would violate the legislative policy underlying the Taylor Law. The construction sought by the City and BCB of BCB determining scope of bargaining, while PERB handles impasse resolution, would, in this Court’s opinion, result in such an absurdity and is rejected by this Court.
The motion of the PBA for summary judgment declaring that chapter 641 of the Laws of 1998 does not violate the Home *154 Rule provision of the New York State Constitution and that chapter 641 places jurisdiction of scope of bargaining and impasse determination and resolution in negotiations between the City and the PBA with PERB rather than the BCB is granted. The cross motion of the City for an order declaring that chapter 641 of the Laws of 1998 violates the Home Rule provision of the State Constitution is denied.